IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AVIALL SERVICES, INC.,          §
                                §
        Plaintiff-              §
        counterdefendant,       §
                                §    Civil Action No. 3:97-CV-1926-D
VS.                             §
                                §
COOPER INDUSTRIES, LLC,         §
                                §
        Defendant-              §
        counterplaintiff.       §

MEMORANDUM OPINION
AND ORDER

In this lawsuit seeking recovery under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, and on other federal- and state-law claims, the court must decide whether the plaintiff-land purchaser has established the defendant-land seller's liability under CERCLA and whether some or all of the plaintiff's other claims must be dismissed. For the reasons that follow, the court grants in part and denies in part both parties' summary judgment motions, and, pending receipt of supplemental briefing, defers final rulings on the recoverability of certain costs incurred in cleaning up two of the four facilities at issue.

I

A

Defendant Cooper Industries, Inc. (now Cooper Industries, LLC) ("Cooper") owned four sites at which it operated an aircraft engine maintenance business. *Cooper Indus., Inc. v. Aviall Servs., Inc.,*

543 U.S. 157, 163 (2004).  These were known as the Forest Park Facility ("Forest Park"), Love Field Facility ("Love Field"), Carter Field Facility ("Carter Field"), and Lemmon Terminal Facility ("Lemmon Terminal").  In 1981 it sold the business to plaintiff Aviall Services, Inc. ("Aviall"), who later discovered that both Aviall and Cooper had contaminated the soil and groundwater at the sites with hazardous substances.  *Id.*[1]  Aviall later sold the properties but retained contractual liability for the cleanup.

During the period when Aviall was the owner, it notified the Texas Natural Resource Conservation Commission ("TNRC") of the pollution.  *Id.* at 164.[2]  The TNRC advised Aviall that it was violating state environmental laws, directed it to clean up the sites, and threatened enforcement action if Aviall failed to undertake remediation.  *Id.*  Aviall voluntarily cleaned up the properties, and neither the U.S. Environmental Protection Agency ("EPA"), the TNRC, nor any other governmental entity has undertaken judicial or administrative measures against Aviall or Cooper.  *Id.*  No third party has sued Aviall or Cooper concerning any of the

---

[1]One of the four sites—Lemmon Terminal—is contaminated with petroleum hydrocarbons, and the parties have stipulated that Aviall does not seek to hold Cooper liable under CERCLA for the cleanup costs incurred at this site.  *See infra* § III(C).

[2]The TNRC is now the Texas Commission on Environmental Quality.  The court will refer to it as the TNRC, by which it was known at times pertinent to this litigation.

conditions or the facilities.

Aviall brought the instant action against Cooper seeking to recover the cleanup costs it had expended and those that it anticipated incurring in the future. *Id.* It asserted claims for cost recovery under CERCLA § 107(a), 42 U.S.C. § 9607(a), for contribution under CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1), and for a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and it alleged various pendent state-law claims.[3] *Id.* Aviall amended its complaint, dropping the independent § 107(a) claim and alleging instead that it was entitled under § 113(f)(1) to seek contribution from Cooper, as a potentially responsible party ("PRP"), for response costs and other liability. *Id.*

Both parties moved for summary judgment, and the court held that Aviall could not maintain a § 113(f)(1) claim because it had not alleged any prior or pending CERCLA enforcement action against it. *Aviall Servs., Inc. v. Cooper Indus., Inc.*, 2000 WL 31730, at *4 (N.D. Tex. Jan. 13, 2000) (Fitzwater, J.) ("*Aviall I*"), *rev'd*,

---

[3]Aviall sought relief based on theories of breach of contract; breach of express warranty; contractual indemnification; declaratory judgment; contribution under § 361.344(a) of the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ann. § 361.344(a) (Vernon 2001); contribution under § 26.3513(j) of the Texas Water Code, Tex. Water Code Ann. § 26.3513(j) (Vernon 2008); quantum meruit; and attorney's fees. *See Aviall Servs., Inc. v. Cooper Indus., Inc.*, 2000 WL 31730, at *1 (N.D. Tex. Jan. 13, 2000) (Fitzwater, J.), *rev'd*, 312 F.3d 677 (5th Cir. 2002) (en banc), *rev'd*, 543 U.S. 157 (2004).

312 F.3d 677 (5th Cir. 2002) (en banc), *rev'd*, 543 U.S. 157 (2004).
The court dismissed the claim without prejudice. *Id.* The CERCLA
claim was the sole basis for the court to exercise subject matter
jurisdiction (the parties are not diverse). Having dismissed that
claim on the merits, the court declined in its discretion to
exercise supplemental jurisdiction over Aviall's pendent state-law
causes of action. *Id.* at *5.

Although a panel of the Fifth Circuit initially affirmed,[4] the
*en banc* Fifth Circuit reversed, holding that § 113(f)(1) authorizes
one PRP to seek contribution from other PRPs for cleanup costs when
no civil action has been brought under § 106 or § 107(a). *Aviall
Servs., Inc. v. Cooper Indus., Inc.*, 312 F.3d 677, 691 (5th Cir.
2002) (en banc), *rev'd*, 543 U.S. 157 (2004). The Supreme Court
granted certiorari, *Cooper Industries, Inc. v. Aviall Services,
Inc.*, 540 U.S. 1099 (2004), and reversed and remanded, holding that
§ 113(f) "authorizes contribution claims only 'during or following'
a civil action under § 106 or § 107(a), and it is undisputed that
Aviall has never been subject to such an action." *Cooper Indus.*,
543 U.S. at 168.

Aviall and an *amicus* contended that if Aviall could not
recover under § 113(f), it could still recover under § 107(a),

_____

[4]*Aviall Servs., Inc. v. Cooper Indus., Inc.*, 263 F.3d 134 (5th
Cir. 2001), *reh'g granted en banc*, 278 F.3d 416 (5th Cir. 2001),
*rev'd*, 312 F.3d 677 (5th Cir. 2002) (en banc), *rev'd*, 543 U.S. 157
(2004).

despite its own status as a PRP under CERCLA. *Id.* The Supreme Court noted that neither this court, the Fifth Circuit panel, nor the *en banc* Fifth Circuit had considered a § 107(a) claim. *Id.* It concluded that both the § 107(a) claim and the question whether Aviall had waived the claim "merit[ed] full consideration by the courts below." *Id.* at 169 ("Both the question whether Aviall has waived this claim and the underlying § 107 question (if it is not waived) may depend in part on the relationship between §§ 107 and 113."). Accordingly, the Court remanded for further proceedings consistent with its opinion.

B

On remand to the Fifth Circuit, the *en banc* court ordered the case remanded to this court "with instructions to permit Aviall . . . to amend its complaint, if necessary, to assert, free of any challenge of waiver or forfeiture, whatever statutory claims it urges in light of the Supreme Court's decision, without prejudice to Cooper['s] . . . other defenses." *Aviall Servs., Inc. v. Cooper Indus., Inc.*, No. 00-10197, order at 1-2 (5th Cir. Feb. 15, 2005) (en banc) (order).[5] Under the Fifth Circuit's order, this court

---

[5]In response to the Fifth Circuit's order, Cooper filed in the Supreme Court a petition for a writ of mandamus. It maintained that the Fifth Circuit had contravened the Supreme Court's mandate "when, without the benefit of any substantive briefing or argument, [the Fifth Circuit] issued a remand order to 'permit Aviall . . . to amend its complaint . . . free of any challenge of waiver or forfeiture' despite [the Supreme] Court's express determination that the 'preliminary waiver question' should, on remand from [the Supreme] Court, receive 'full consideration by the courts below.'"

- 5 -

permitted Aviall to file a third amended complaint ("third complaint"). In the third complaint, Aviall sues Cooper on theories of cost recovery under CERCLA § 107(a) and for response costs incurred or to be incurred under CERCLA; in the alternative, contribution under CERCLA § 107(a); declaratory judgment; common law contribution under state and federal law to recover its response costs attributable to Cooper; contribution under the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ann. § 361.344(a) (Vernon 2001); contribution under the Texas Water Code, Tex. Water Code Ann. § 26.3513(j) (Vernon 2008); breach of contract; breach of express warranty; contractual indemnification; quantum meruit; and attorney's fees.[6]

In 2005 Aviall and Cooper both moved for summary judgment.[7]

_____

Pet. for Writ of Mandamus, *In re Cooper Indus., Inc.*, 544 U.S. 1031 (2005) (No. 04-1182). The Supreme Court denied the petition.

[6]Cooper asserts counterclaims for contribution under CERCLA § 113(f)(1), to the extent there were any releases or threatened releases of hazardous substances within the meaning of § 107(a), and under Texas law for contractual indemnification, release, and breach of contract.

[7]Cooper also moved to dismiss all state-law claims asserted in Aviall's third complaint. The court did not reach this motion because, once it dismissed Aviall's federal-law claims, it declined in its discretion to consider Aviall's state-law claims and dismissed them without prejudice. *See Aviall Servs., Inc. v. Cooper Indus., LLC,* 2006 WL 2263305, at *10 (N.D. Tex. Aug. 8, 2006) (Fitzwater, J.) ("As in [*Aviall I*], having dismissed Aviall's federal question claims on the merits, the court declines to exercise supplemental jurisdiction over its remaining state-law claims and dismisses them without prejudice." (footnotes omitted)), *remanded*, 235 Fed. Appx. 222 (5th Cir. 2007) (per curiam).

Cooper sought, *inter alia*, summary judgment dismissing all of Aviall's federal claims. The court granted the motion, concluding that § 107(a) did not afford Aviall a cause of action for cost recovery, and that neither § 107(a) nor federal common law provided Aviall a claim for contribution. *Aviall Servs., Inc. v. Cooper Indus., LLC,* 2006 WL 2263305, at *10 (N.D. Tex. Aug. 8, 2006) (Fitzwater, J.) ("*Aviall II*"), *remanded*, 235 Fed. Appx. 222 (5th Cir. 2007) (per curiam). Because the court had dismissed Aviall's federal claims,[8] it declined to exercise supplemental jurisdiction over the remaining state-law claims. *Id.*

While Aviall's appeal of *Aviall II* was pending, the Supreme Court decided *United States v. Atlantic Research Corp.,* ___ U.S. ___, 127 S. Ct. 2331 (2007), which held that CERCLA § 107(a)(4)(b) *does* provide a cost recovery cause of action for PRPs such as Aviall. *Id.* at 2339. In response to *Atlantic Research*, this court filed an order stating, in relevant part:

> In view of the Supreme Court's decision today in *United States v. Atlantic Research Corp.*, the court advises the United States Court of Appeals for the Fifth Circuit that if it remands this case to this court, the court will vacate its judgment entered August 8, 2006 and reconsider its decision so as to comply with *Atlantic Research Corp.*

*Aviall Servs., Inc. v. Cooper Indus., LLC,* No. 3:97-CV-1926-D,

---

[8]The court noted that, although Aviall sought relief under the federal Declaratory Judgment Act, this claim was not an independent source of jurisdiction. *Aviall II*, 2006 WL 2263305, at *10 n.15 (citing *Aviall I*, 2000 WL 31730, at *5).

order (N.D. Tex. June 11, 2007) (Fitzwater, J.) (citation omitted). The Fifth Circuit, in turn, remanded the case "to the district court for reconsideration in light of the Supreme Court's recent decision in *United States v. Atlantic Research Corp.*" *Aviall Servs. Inc. v. Cooper Indus. Inc.*, 235 Fed. Appx. 222 (5th Cir. 2007) (per curiam).

C

On remand, the parties have filed supplemental briefs in support of the cross-motions for summary judgment that they initially filed in 2005.[9] In its most recent briefing, Aviall seeks summary judgment establishing that Cooper is liable under CERCLA § 107(a), and it reserves the damages issue for trial. Cooper moves for summary judgment dismissing all of Aviall's federal claims, and it also moves to exclude the testimony of Aviall's expert, Jeffrey Zelikson ("Zelikson"), or, in the alternative, for a Fed. R. Civ. P. 56(f) continuance.

---

[9]On November 14, 2005 Cooper filed a motion for summary judgment on all federal claims, and Aviall filed a motion for partial summary judgment on CERCLA liability. After the Fifth Circuit remanded the case following the Supreme Court's decision in *Atlantic Research*, the court by November 21, 2007 case management order established a schedule for the parties to file supplemental briefs. Accordingly, Aviall and Cooper filed the instant federal-law motions for partial summary judgment on February 22, 2008, and the briefing concluded with the filing of reply briefs on May 9, 2008.

In *Aviall II* the court dismissed Aviall's CERCLA- and federal common law-based contribution claims. *Aviall II,* 2006 WL 2263305, at *9-*10. Because nothing in *Atlantic Research* calls into question this court's decision in *Aviall II* regarding these claims, the court adheres to *Aviall II* and grants Cooper's November 14, 2005 motion to that extent.

## III

The court now turns to the remainder of Aviall's and Cooper's summary judgment motions. To decide them, the court must address four preliminary issues.

### A

First, Cooper argues that Aviall waived its § 107 cost recovery claim when, before the Supreme Court rendered its decision in *Cooper Industries*, Aviall amended its complaint to drop the claim. The *en banc* Fifth Circuit has foreclosed Cooper from relying on this argument. *See Aviall*, No. 00-10197, order at 1-2 (ordering this court to permit Aviall "to assert, free of any challenge of waiver or forfeiture, whatever statutory claims it urges in light of the Supreme Court's decision"). And Cooper acknowledged this fact in briefing submitted in connection with the motions decided in *Aviall II*. *See Aviall II,* 2006 WL 2263305, at

*2 n.5.[10]

Cooper nevertheless maintains that the more recent remand order, which is silent on waiver, revives the issue. That order states, in a single sentence, that the case is remanded "to the district court for reconsideration in light of the Supreme Court's recent decision in *United States v. Atlantic Research Corp.*" *Aviall*, 235 Fed. Appx. 222 (citation omitted). Cooper maintains that the reason the order is silent regarding waiver is because the earlier remand order (which expressly foreclosed the issue) was motivated by the Fifth Circuit's desire to reach——free of interference from "procedural" arguments——the unsettled substantive issues surrounding § 107. Cooper posits that, after these substantive issues were resolved by *Atlantic Research,* the procedural waiver arguments again "became relevant." D. May 9, 2008 Reply Br. 15.[11] The court disagrees.

There is no support for reading any intent into the panel's decision other than to respond to this court's order indicating that, if the Fifth Circuit remanded this case, the court would

_____

[10]Cooper stated in its brief that it "respectfully recognize[d] that the Fifth Circuit's instruction allowing Aviall to assert CERCLA statutory claims 'free of any challenge of waiver or forfeiture' preclude[d] this Court from further addressing Cooper's strong waiver defenses to Aviall's renewed CERCLA § 107(a) claims at this time." *Aviall II,* 2006 WL 2263305, at *2 n.5.

[11]Because the relevant briefing and summary judgment evidence is found in pleadings filed over a period of several years, the court for clarity will refer to each brief and appendix by name and by date filed.

vacate its judgment and reconsider its decision so as to comply with *Atlantic Research Corp.* The Fifth Circuit panel did just that, remanding the case "for reconsideration in light of . . . [*Atlantic Research Corp.*]" *Aviall*, 235 Fed. Appx. 222. There is no change in circumstances that would have authorized the Fifth Circuit panel——which was bound by a ruling of the *en banc* court——to revisit the earlier order. Moreover, unlike the Fifth Circuit panel——which was simply responding to this court's indicative ruling——the *en banc* court was addressing a question that the Supreme Court's *Cooper* opinion had itself discussed. *See Cooper Indus.*, 543 U.S. at 169 (addressing whether Aviall had waived a § 107 claim, and concluding that "the preliminary waiver question merit[s] full consideration by the courts below").

Accordingly, the court holds that the Fifth Circuit's *en banc* order forecloses Cooper's waiver argument, and it therefore declines to consider it on the merits.[12]

---

[12]The Supreme Court's statement that the preliminary waiver question merits "full consideration" by the courts below, *Cooper Industries,* 543 U.S. at 169, does not affect the court's conclusion. This statement merely explains the Court's traditional practice of "not decid[ing] in the first instance issues not decided below," *id.* (internal quotation marks omitted), and does not (as Cooper suggests) prescribe a minimum amount of briefing that lower courts must consider before deciding the issue themselves. Therefore, it is of no moment that the Fifth Circuit's ruling on the waiver issue was made in summary fashion and without the amount of argument that Cooper had requested.

Second, Cooper asserts that Aviall's § 107 claim must be dismissed because Aviall did not notify the EPA Administrator and the Attorney General of the United States of the lawsuit until approximately 1½ years after it was filed. Cooper relies on 42 U.S.C. § 9613(l), which provides that "[w]henever any action is brought under this chapter[,] . . . the plaintiff shall provide a copy of the complaint to the Attorney General of the United States and to the Administrator of the [EPA]." The court concludes that the timing of Aviall's compliance with this provision does not warrant dismissing the claim.

Section 9613(l) contains no deadline for providing a copy of the complaint, and it does not establish any precondition for filing suit. *See id.* It is therefore unlike the statutes at issue in the cases that Cooper cites, all of which plainly forbid a party from commencing suit before giving "notice" both to the government and the defendant and awaiting the expiration of a waiting period. *See Hallstrom v. Tillamook County,* 493 U.S. 20, 25 (1989) (applying Resource Conservation and Recovery Act ("RCRA") provision expressly forbidding any action brought "prior to sixty days after the plaintiff ha[d] given notice of the violation" (internal quotation marks omitted) (quoting 42 U.S.C. § 6972(b)(1))); *Cooper v. Armstrong Rubber Co.,* 1989 WL 60338, at *6 (S.D. Miss. Feb. 1, 1999) (applying similar RCRA provision); *W. Dallas Coal. for Envtl.*

*Justice v. United States,* 1998 WL 892122, at *2 (N.D. Tex. Dec. 14, 1998) (Buchmeyer, C.J.) (applying similar provision found elsewhere in CERCLA but inapplicable here). Section 9613(l) requires that the plaintiff provide a copy of a complaint in an action, not advance notice of a planned lawsuit.

Statutes that require advance notice of suit, coupled with a mandatory waiting period, serve important purposes that are inapplicable here. First, they sometimes involve lawsuits that are brought to enforce *public* regulations that are otherwise enforced by the government, and the notice affords the government an opportunity to intervene and prosecute the case for itself. *See Hallstrom,* 493 U.S. at 29. There is no similar mechanism for government enforcement of a private cost recovery action under CERCLA § 107.

Second, notice to an alleged violator gives the party an opportunity to correct offending behavior before being sued. *Id.* But § 9613(l) does not even mention the prospective defendant as a required recipient of the copy of the complaint. Moreover, in the context of CERCLA § 107 cost recovery actions, a change in the potential defendant's conduct is largely immaterial, because the plaintiff is seeking recompense for its cleanup of pollution that has already occurred.

If Congress intended that there be a hard deadline for serving a copy of the complaint in this context, it could have said so, as

it has done in other contexts. *Cf., e.g.,* 42 U.S.C. § 6972(b)(1) (RCRA provision) ("No action may be commenced under [this] subsection . . . prior to 60 days after the plaintiff has given notice of the violation[.]"); 42 U.S.C. § 9659(d)(1) (CERCLA provision inapplicable here) (similar). There are myriad reasons why Congress might require a private party to provide a copy of a complaint to the government, without also mandating advance notice of suit or imposing a waiting period before suit is filed. For example, § 9613(l) may be designed simply to facilitate record keeping——that is, to allow the Attorney General and the EPA to monitor the frequency and progress of CERCLA § 107 lawsuits nationwide. These data may enable them to determine more accurately how federal environmental laws should be enforced, to craft a legislative agenda, or to allocate agency resources. Or they may be better able to report to Congress about the efficacy of CERCLA in achieving Congress' legislative goals. In these respects, notice that litigation has been initiated plays a distinct role from notice and a prescribed waiting period before suit is filed.

Moreover, dismissal of Aviall's lawsuit on this ground would seem inconsistent with the purpose of "encourag[ing] private parties to perform voluntary cleanups of sites [and] . . . remov[ing] unnecessary obstacles to their ability to recover their costs from the parties that are liable for the contamination."

National Oil and Hazardous Substances Pollution Contingency Plan, 55 Fed. Reg. 8666, 8792-93 (1990) (EPA explanation of public policy goal of CERCLA with respect to private parties); *see also infra* § V(A)&(B)(1) (discussing concept more fully). Thus, in the absence of a congressional directive, the court declines to hold that Aviall's timing in providing a copy of its complaint to the EPA Administrator and Attorney General warrants dismissal of its CERCLA claim. *See Greene v. Product Manufacturing Corp.*, 842 F. Supp. 1321, 1324 (D. Kan. 1993) (declining to dismiss CERCLA claim where copy of complaint was provided approximately 1½ years after suit was filed).[13]

C

Third, Cooper seeks summary judgment on Aviall's claims for costs that are related to the cleanup of pure petroleum. Aviall agrees that such costs are not recoverable under CERCLA, *see, e.g.,* 42 U.S.C. § 9601(14) (excluding petroleum from definition of "hazardous substance"); *id.* § 9601(33) (excluding petroleum from definition of "pollutant or contaminant"), and has stipulated that this rule would bar any recovery under CERCLA of the cleanup costs it incurred at the Lemmon Terminal. *See* P. Apr. 16, 1999 Br. 14

---

[13]Cooper argues in the alternative—and without citing authority—that Aviall was required to give notice a *second* time when it amended its complaint to assert the stand-alone § 107 claim. The court disagrees. Such a requirement lacks support in the language of the statute, which contemplates notice only of each "action" brought under CERCLA. *See* 42 U.S.C. § 9613(l).

n.26; *see also* P. Feb. 22, 2008 Br. 1 n.1.   Although Aviall

disavows any attempt to recover such costs, various allegations of

its third complaint can be read together to assert such a claim

regarding the Lemmon Terminal.   *See* 3d Am. Compl. ¶ 41 (alleging

that a "'release' . . . of 'hazardous substances' has occurred at

the Facilities" within the meaning of CERCLA); *id.* at ¶ 1 (defining

"Facilities" to include Lemmon Terminal).   Accordingly, Cooper's

motion for summary judgment is granted as to Aviall's claim for

cost recovery under CERCLA § 107(a) with respect to the Lemmon

Terminal.[14]

D

Fourth, Aviall maintains that Cooper's basis for seeking

summary judgment with respect to costs incurred at Forest Park,

Carter Field, and Love Field is improper.

Cooper seeks summary judgment on the ground that Aviall's

response costs are inconsistent with the national contingency plan

("NCP").   *See, e.g.,* 42 U.S.C. § 9607(a)(4)(B) (establishing that

---

[14]The court declines to grant Cooper's request for a
declaration that pure petroleum-related costs at the Forest Park,
Love Field, and Carter Field facilities are also not recoverable,
because there is no indication that Aviall seeks to recover such
costs, and thus no "controversy" has been shown to exist.   *See,
e.g., Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th
Cir. 2000) ("A declaratory judgment action is ripe for adjudication
only where an 'actual controversy' exists.   As a general rule, an
actual controversy exists where a substantial controversy of
sufficient immediacy and reality exists between parties having
adverse legal interests." (internal brackets, citations, and
quotation marks omitted)).

plaintiff may only recover response costs that are "consistent with the [NCP]"); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir. 1989) (same). The court recognizes that "numerous courts have pointed out that consistency with the NCP is a peculiarly fact intensive question that can normally only be determined at trial, or at least after a full pretrial record has been prepared." *Buffalo Color Corp. v. AlliedSignal, Inc.*, 139 F.Supp.2d 409, 418 (W.D.N.Y. 2001). For this reason, courts have typically bifurcated the issues of liability and damages, enabling a plaintiff to obtain summary judgment on the liability issue while reserving for trial the issue of which damages are recoverable—which includes questions of necessity and consistency with the NCP.[15] *See Amoco Oil,* 889 F.2d at 667-68 ("Bifurcation and the use of summary judgment provide efficient approaches to these cases by narrowing the issues at each phase, by avoiding remedial questions if no liability attaches, and by potentially hastening remedial action or settlement discussions once liability is determined."); *id.* at 672 (granting plaintiff's motion for partial summary judgment). Aviall posits that this should preclude Cooper from obtaining summary judgment on its motion. The court disagrees.

The mere fact that a plaintiff, without proving NCP compliance, can prevail on its own motion for partial summary

---

[15]*See infra* § VII(B)(2) (addressing Cooper's argument that Aviall must prove NCP compliance at liability phase of litigation).

judgment does not mean that a defendant is precluded from obtaining summary judgment dismissing the entire claim when there is no genuine question of fact that NCP compliance is lacking. Because Aviall will bear the burden at trial of proving NCP compliance, Cooper can move for summary judgment by pointing the court to the absence of evidence of such compliance. If the summary judgment evidence that Aviall produces (viewed favorably to Aviall) is insufficient to establish NCP compliance, Cooper is entitled to summary judgment. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (holding that movant is entitled to summary judgment when party with burden of proof fails to establish genuine fact issue); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (same); *Union Pac. R. Co. v. Reilly Indus., Inc.,* 215 F.3d 830, 835 (8th Cir. 2000) (granting summary judgment on NCP compliance) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."). Questions of NCP compliance *can* be fact-intensive and best reserved for trial, but they are not necessarily so. *See, e.g., Carson Harbor Village v. County of Los Angeles,* 433 F.3d 1260, 1266-67 (9th Cir. 2006) (affirming summary judgment where nonmovant failed to establish NCP compliance); *Reg'l Airport Auth. of Louisville v. LFG, LLC,* 460 F.3d 697, 709 (6th Cir. 2006) (same); *Union Pac.,* 215 F.3d at 839 (same). Accordingly, the court will address the merits of this ground of

Cooper's summary judgment motion.

IV

Cooper moves for summary judgment on the ground that Aviall's response costs are inconsistent with the NCP. *See* 42 U.S.C. § 9607(a)(4)(B).

As noted above, because Aviall will have the burden at trial of establishing compliance with the NCP, Cooper can obtain summary judgment by pointing the court to the absence of evidence to support such compliance. *See Celotex Corp.*, 477 U.S. at 325. Once Cooper does so, Aviall must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little*, 37 F.3d at 1075. An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict for Aviall. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Aviall's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

V

A

"The NCP, more fully known as the National Oil and Hazardous Substances Pollution Contingency Plan, *see* 40 C.F.R., Part 300, is comprised of EPA regulations setting forth procedures and standards

- 19 -

for responding to releases of hazardous substances." *Union Pac.,* 215 F.3d at 835. It is designed to "promote cost-effective measures to protect public health and the environment." *Id.* A private party can recover its response costs under CERCLA § 107 only when those costs are consistent with the NCP. *See* 42 U.S.C. § 9607(a)(4)(B); *Amoco Oil,* 889 F.2d at 672.

In 1990 the EPA revised the standard for determining whether cleanup costs will be considered "consistent with the NCP." *County Line Inv. Co. v. Tinney,* 933 F.2d 1508, 1514-15 (10th Cir. 1991). In doing so, it reduced the standard for compliance from "strict" to "substantial compliance." *Id.* "A private party response action will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements . . . and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i). Viewing the facts favorably to Aviall, this court's task is to decide whether Aviall has complied with this standard. *See, e.g., La.-Pac. Corp. v. ASARCO Inc.,* 24 F.3d 1565, 1576 (9th Cir. 1994) ("[T]he issue of substantial compliance is a mixed question of law and fact. Its resolution involves the application of the law to a set of facts.").

The NCP sets out a variety of provisions that private parties undertaking voluntary cleanups should consider. *See* 40 C.F.R. § 300.700(c)(3)(i) & (c)(5)-(7). One set calls for an opportunity

for public comment concerning the selection of a response action, and identifies a set of potentially applicable NCP regulations. *Id.* § 300.700(c)(6)(i)-(v) (the "public participation" requirement). Failure to substantially comply with the public participation requirement is considered a material deviation from the NCP and is grounds for summary judgment. *See* 40 C.F.R. 300.700(c)(3)(i) (2007) (providing that private party response action must result in a "CERCLA-quality cleanup"); 55 Fed. Reg. 8666, 8793 (1990) (explaining that meaningful public participation is necessary element of CERCLA-quality cleanup); *see also, e.g., Union Pac.,* 215 F.3d at 839 (holding that plaintiff's failure to substantially comply with public participation requirement rendered cleanup inconsistent with NCP); *Carson Harbor Village,* 433 F.3d at 1266-67 (same); *Reg'l Airport Auth.,* 460 F.3d at 709 (same).

B

1

Cooper posits that Aviall cannot prove that it incurred response costs that are consistent with the NCP because it cannot show compliance with the public participation requirement. Aviall opposes this contention on two grounds. First, it maintains that it in fact afforded sufficient opportunity for public comment. Second, it contends that the TNRC's involvement in the cleanup was itself sufficient to satisfy this requirement. *Compare Bedford Affiliates v. Sills,* 156 F.3d 416, 428 (2d Cir. 1998) (holding that

significant involvement of government agency charged with protecting public environmental interest satisfies public participation requirement in certain circumstances) *with Pierson Sand & Gravel, Inc. v. Pierson Twp.,* 89 F.3d 835, 1996 WL 338624, at *5 (6th Cir. 1996) (unpublished table decision) (holding that it may not) *and Sherwin-Williams Co. v. City of Hamtramck,* 840 F. Supp. 470, 477 (E.D. Mich. 1993) (same).

The court must determine the meaning of "substantial compliance" within the context of public participation. This includes a determination of the significance, if any, of the TNRC's involvement. When the EPA in 1990 shifted from a "strict" to "substantial compliance" standard for private parties, it did so "to encourage private parties to perform voluntary cleanups of sites, and to remove unnecessary obstacles to their ability to recover their costs from the parties that are liable for the contamination." 55 Fed. Reg. at 8792-93. The EPA expressly recognized that requiring private parties to adhere to a set of mechanical rules would impede this objective.[3] Thus the list of

---

[3]     [P]roviding a list of rigid requirements may serve to defeat cost recovery for meritorious cleanup actions based on a mere technical failure by the private party that has taken the response action . . . . [P]rivate parties generally will have limited experience in performing cleanups under the NCP, and thus may be unfamiliar with the detailed practices and procedures in this rather long and complex rule; an omission based on lack of experience with the Superfund program should not be

public comment provisions identified in 40 C.F.R. § 300.700(c)(6) is only a "universe of requirements which are potentially relevant," and should "not be construed as a fixed list of requirements." 55 Fed. Reg. at 8793.

The court therefore disagrees with Cooper's suggestion that this case can be decided on the basis of a simple comparison of Aviall's conduct with the "potentially relevant" provisions that the NCP cites. The fact that Aviall did not adhere to particular provisions of the NCP is not controlling, and the court declines to undertake the potentially arbitrary task of resolving "how much" adherence to NCP regulations is "enough." The court must instead find a more principled method for deciding whether a party has substantially complied with the public participation requirement.

The cases do not always express such a principle. Sometimes, in finding that a party has failed to substantially comply with the public participation requirement, courts have simply emphasized what the party did *not* do, without explaining why the omitted conduct was necessary. *See Reg'l Airport Auth.*, 460 F.3d at 707 (although acknowledging that compliance with certain NCP provision was only "'potentially' required," holding—without explanation—that such compliance was required "under the facts of

_____

> grounds for defeating an otherwise valid cost recovery action, assuming the omission does not affect the quality of the cleanup.

55 Fed. Reg. at 8793.

- 23 -

this case"); *Carson Harbor Village*, 433 F.3d at 1266 n.5 (holding that meetings with representatives of various affected parties were insufficient to meet public participation requirement because "there was never an opportunity for the public at large to comment on the plan," without explaining why such opportunity was necessary). Other courts, in finding that a party *did* substantially comply with the NCP, have emphasized what the party *did*, without explaining why the actions were sufficient. *See La.-Pac. Corp.*, 24 F.3d at 1576 (emphasizing various meetings that party had held, along with fact that feasibility study was made publicly available at party's office).

But while a guiding principle is not always expressed, it is nevertheless discernable. At least three courts of appeals have held that a public meeting will not serve the public participation requirement unless it is "meaningful." *See Reg'l Airport Auth.*, 460 F.3d at 708; *Union Pac.*, 215 F.3d at 835, 837-38; *Pierson Sand*, 1996 WL 338624, at *3-*4 (applying same concept but with different terminology). Although these courts did not specifically state where they derived this "meaningfulness" requirement, it is clear that their goal was to achieve the *purposes* of the public participation requirement. *Cf.* 55 Fed. Reg. at 8793 (explaining that "meaningful" public participation is necessary for achieving NCP's purposes). Other courts have explicitly relied on the purposes of the requirement in reaching their decisions. *See*

*Bedford*, 156 F.3d at 428 (holding that significant state involvement satisfies public participation requirement because "it serves the identical purpose that the public notice provision seeks to effectuate"); *Carson Harbor Village, Ltd. v. Unocal Corp.*, 287 F.Supp.2d 1118, 1168 (C.D. Cal. 2003) (holding that government involvement must be accompanied by public comment because a purpose of NCP "is to ensure that those responsible for the cleanup receive citizens' input regarding environmental conditions in the community"), *aff'd*, 433 F.3d 1260 (9th Cir. 2006); *Norfolk S. Ry. Co. v. Gee Co.*, 2002 WL 31163777, at *30 (N.D. Ill. Sept. 30, 2002) (holding that public participation requirement was satisfied in part because "the NCP policy is . . . to allow potentially responsible parties an opportunity to comment before costs are incurred," and no PRPs were denied an opportunity to comment); *AlliedSignal, Inc. v. Amcast Int'l Corp.*, 177 F.Supp.2d 713, 743 n.62 (S.D. Ohio 2001) ("[A]n entity substantially complies with the NCP, when its actions meet the purposes of that regulation[.]").

The court agrees with this purpose-based methodology. It appears to be the path for deciding whether a party has "substantially complied" with the NCP that is most faithful to the relevant statute and regulations, if it is not in fact the only non-arbitrary way of making this determination. The question whether Aviall has substantially complied with the public participation requirement will thus depend on whether it has

achieved the purposes of that requirement.

2

The EPA has identified two purposes for the public participation requirement: first, to ensure that PRPs and concerned citizens "that may [be] affect[ed]" by cleanup decisions are able to represent their interests; and, second, to ensure that cleanups "performed without governmental supervision" are carried out in an "environmentally sound" manner. *See* 55 Fed. Reg. at 8795 ("The public—both PRPs and concerned citizens—have a strong interest in participating in cleanup decisions that may affect them, and their involvement helps to ensure that these cleanups—which are performed without governmental supervision—are carried out in an environmentally sound manner."). In other words, the public participation requirement in the context of private cleanups serves to protect both the particular interests of individually affected citizens and the shared public interest in protecting the environment. With respect to the latter interest, the EPA appears to view oversight by a government agency charged with protecting the environment as providing adequate protection as well. *See id.; see also id.* at 8794 (acknowledging federal government's "strong interest in ensuring that cleanup actions that derive a benefit from CERCLA section 107(a)(4)(B) . . . are performed in an environmentally sound manner"). It makes no similar allowance with respect to the former, which ensures that those with more

particularized interests in the cleanup––that is, those with more than the shared public interest in the environment that can be adequately protected by governmental oversight––have an opportunity to participate in decisions that may affect them. *See id.* at 8795 ("The public––both PRPs and concerned citizens––have a strong interest in participating in cleanup decisions that may affect them[.]"); 40 C.F.R. § 300.155(c) ("The community relations requirements . . . are intended to promote active communication [with] communities affected by discharges or releases."); 40 C.F.R. § 300.155(a) ("When an incident occurs, it is imperative to give the public prompt, accurate information on the nature of the incident and the actions underway to mitigate the damage . . . . [C]ommunity relations personnel should ensure that all appropriate public and private interests are kept informed and that their concerns are considered throughout a response."). The EPA's view that governmental involvement is inadequate to serve this interest is illustrated by the fact that even government agencies must themselves solicit public comment before performing a cleanup. *E.g.*, *Pierson Sand,* 1996 WL 338624, at *5 ("NCP requires opportunities for public participation even when a government agency develops a cleanup plan itself").

The court therefore respectfully disagrees with *Bedford*'s conclusion that the only purpose for the public participation requirement is to protect the shared public interest in

environmentally sound cleanups, and that governmental oversight supervision is sufficient to meet the requirement. *See Bedford,* 156 F.3d at 428. Although *Bedford* quotes from the same portion of the NCP preamble that the court discusses above, it overlooks the important aspect regarding the concerned citizens' "strong interest in participating in cleanup decisions that may affect them," 55 Fed. Reg. at 8795. *See Bedford,* 156 F.3d at 428; *see also Carson Harbor Village,* 287 F.Supp.2d at 1168 (explaining that although *Bedford* is correct that one purpose of public participation requirement is to ensure that cleanups performed without governmental oversight are environmentally sound, this is not the only purpose).

Therefore, considering the NCP's express purposes, the court concludes that for a party to substantially comply with the public participation requirement, (1) there must be sufficient oversight——either by the public or by a government agency charged with protecting the public environmental interest——to protect the public's shared interest in an "environmentally sound" cleanup; and (2) parties who might foreseeably be affected by the private party's decisions must be given a meaningful opportunity to participate in them. *Cf. Norfolk S. Ry. Co.*, 2002 WL 31163777, at *30 (finding public participation requirement satisfied where there was significant governmental involvement and comprehensive input by affected community member).

Regarding the second element, the concept of "affected parties" is broadly defined to include anyone who might be affected by a cleanup decision. 55 Fed. Reg. at 8795 ("The public—both PRPs and concerned citizens—have a strong interest in participating in cleanup decisions *that may affect them*[.]" (emphasis added)); 40 C.F.R. § 300.155(c) ("The community relations requirements . . . are intended to promote active communication [with] communities affected by discharges or releases."); *cf.* 40 C.F.R. § 300.415(n) (contemplating publication of notice in a "major local newspaper"). At the same time, it should not be defined so broadly as to include those who would lack any real interest in commenting on it. To require Aviall to solicit comments from such persons would be to impose the same type of rigid formality that the NCP seeks to avoid. *See* 55 Fed. Reg. at 8793-94. Similarly, Aviall need only contact those parties who might have a *foreseeable* interest in commenting on the response action. The NCP does not require, for example, that a private party publish nationwide notice of a response action merely because it is possible that an unknown person living in another state could *have* an interest in the cleanup. *See* 40 C.F.R. § 300.430(f)(3)(i)(A) (contemplating publication of notice in a "major *local* newspaper" (emphasis added)). It does require, however, that the party contact those whom it might hold financially responsible for the cleanup. *See* 55 Fed. Reg. 8795

("PRPs . . . have a strong interest in participating in cleanup decisions that may affect them[.]").

A foreseeably affected party's opportunity to comment must also be "meaningful." 55 Fed. Reg. at 8793 ("[*M]eaningful* public participation . . . is necessary to the achievement of a CERCLA-quality cleanup." (emphasis added)). This means, at a minimum, that the party's views must be considered before any final decisions are reached on the key issues. *See Reg'l Airport Auth.,* 460 F.3d at 708 (holding that public meetings held after implementation of final remedial action were not "meaningful"); *Union Pac.,* 215 F.3d at 837-38 (holding that public meeting held after plaintiff had already begun an "early and essential step" in remediation process was not meaningful); *Pierson Sand,* 1996 WL 338624, at *3-*4 (holding that public meetings were not meaningful where first was held without adequate notice, and second was held after remedy was already selected by means of consent judgment). It also typically requires that some type of public notice be issued advising of the opportunity. *See Pierson Sand,* 1996 WL 338624, at *3-*4 (holding that public meeting did not satisfy public participation requirement because public did not receive adequate notice). This notice requirement may not apply, however, in situations where all foreseeably affected parties have already been contacted, because it is difficult to imagine how it would further advance the NCP's purpose of protecting those parties under

such circumstances. *See Norfolk S. Ry.,* 2002 WL 31163777, at *30 (finding public notice to be unnecessary where affected community member was allowed to participate in decisionmaking process). Of course, because it might be difficult to ensure that all foreseeably affected parties have been contacted, a party may prefer simply to adhere to the NCP's public notice provisions. *See* 55 Fed. Reg. at 8794 ("A private party can, of course, eliminate any risk or uncertainty by meeting the full set of requirements identified by EPA as potentially relevant to private actions.").

The court now turns to the facts of this case.

VI

A

Initially, it is clear that the TNRC's involvement in Aviall's response actions achieves the first purpose of the public participation requirement: the protection of the shared public interest in having "environmentally sound" cleanups. The record indicates that the TNRC——a government agency charged with protecting the public environmental interest——provided substantial oversight and direction throughout Aviall's responses at Forest Park, Love Field, and Carter Field, and it is difficult to envision how public meetings could have more effectively achieved the oversight interest contemplated by the public participation requirement. Therefore, the dispositive question is whether all

foreseeably affected parties were given a meaningful opportunity to comment.

B

To decide whether a reasonable trier of fact could find that all the parties who might foreseeably be affected were given a meaningful opportunity to comment, the court first considers the opportunity to comment regarding the Forest Park cleanup.

1

In the early 1990's, Aviall discovered groundwater contamination at Forest Park, and under the TNRC's oversight and direction, proceeded to clean it up. During the process, it contacted and consulted with two downgradient property owners whose land had been contaminated, as well as the eventual owner of Forest Park. At one point, it also notified Cooper of its intent to recover costs. It made no effort to notify or consult with anyone else.

Aviall maintains that the involvement of these few parties is sufficient because they were the only ones affected by the cleanup. *Cf. supra* § V(B)(2) (acknowledging that public notice may not be required where all foreseeably affected parties have been contacted and there is significant governmental oversight). In support of this assertion, it relies on the expert opinion of Zelikson, who states that Aviall gave all affected parties an opportunity to participate because those who participated were the only ones whose

property was contaminated. Zelikson further opines that Aviall's response actions—taken as a whole—substantially comply with the NCP. Cooper moves to strike Zelikson's opinion as containing impermissible legal conclusions. For the reasons that follow, the court grants the motion in part.

Whether a party has substantially complied with the NCP is a mixed question of law and fact. *La.-Pac.*, 24 F.3d at 1576. This means that, once the factual details regarding Aviall's cleanup efforts have been established, the court decides—as a matter of law—whether those efforts substantially comply with the NCP. *E.g. id.* (reviewing "de novo" the district court's "application of the [substantial compliance standard] to [the] set of facts"); *see also PMC, Inc. v. Sherwin Williams Co.*, 1997 WL 223060, at *9 (N.D. Ill. Apr. 29, 1997) (rejecting expert opinion regarding whether certain actions substantially complied with public participation requirement because this "is a question of law"), *vacated in part on other grounds*, 151 F.3d 610 (7th Cir. 1998). Of course, an expert opinion may assist the trier of fact in establishing the relevant facts. For example, an expert might demonstrate that the neighboring properties of a particular site would not lose value as a result of a particular response action, which in turn could help demonstrate whether they were potentially "affected" by the action. But an expert witness' legal conclusion that a party's conduct substantially complies with the NCP (and, specifically, its public

participation requirement) is not competent summary judgment evidence.

The court therefore grants Cooper's motion with respect to Zelikson's ultimate legal conclusion that Aviall's efforts substantially complied with the NCP. It denies the motion, however, with respect to the portion of Zelikson's testimony that establishes what those efforts were and whether all foreseeably affected persons were allowed to participate (as this concept has been defined by the court). The court considers this testimony next.

2

As previously noted, Zelikson opines that Aviall gave all affected parties an opportunity to participate because those who participated were the only ones whose property was contaminated. He recognizes that the concept of "affected parties" is defined broadly to include more than those with contamination on their property, *see, e.g.,* D. Feb. 22, 2008 App. 336 (Zelikson deposition) ("I think [the concept of "affected communities"] is meant to be broadly interpreted to mean anybody who might be impacted."), so his opinion must be based on the premise that no other parties were affected *in this particular case*. *See id.* at 337-38. Although this is theoretically possible, Zelikson must offer support for this premise before a reasonable trier of fact can accept it. The court holds that he has not.

Zelikson admittedly failed to consider a variety of ways in which persons might have been foreseeably affected by——and desired to comment on——the Forest Park response action.  For example, one class of persons foreseeably affected by a response action consists of those who might be held financially responsible for it.  *See* 55 Fed. Reg. at 8795 (specifically mentioning PRPs as affected parties).  But Aviall never contacted or consulted with the several PRPs whom it had identified in the Forest Park vicinity, and Zelikson did nothing to rule out their interest in commenting.  *See* P. Nov. 14, 2005 App. 1065 (describing Aviall's identification of several PRPs in the area, and stating only that Aviall had notified Cooper of the contamination); D. Feb. 22, 2008 App. 343 (Zelikson deposition) ("I'm not familiar with what happened with [respect to communications with the other PRPs].").

Another way in which a neighboring landowner might be affected by a cleanup is through the loss (or recovery) of property value. Zelikson admits that he did not evaluate this possibility at Forest Park.  *See* D. Feb. 22, 2008 App. 334 ("Q: And what I'm hearing you say here is that for this site you just don't know whether it would in fact impact the surrounding properties' property values?  A: No. I really haven't made any assessment about the surrounding properties at all.").

Finally, as Zelikson acknowledges, someone whose property has been contaminated is also likely to be affected by a response

action.  But Aviall did not contact the City of Dallas, whose property had also been contaminated.  *See id.* at 332.  When confronted with this fact at his deposition, Zelikson equivocated, revealing that he had not seriously considered the issue (if at all).  See *id.* (“Q: Well, how would the city's interest be any different than any of the other neighbors that had contamination on their site?  It's the same, isn't it?  A: I don't know, maybe not.”).  It is clear that Zelikson did not exclude the other ways in which parties might have been foreseeably affected by the Forest Park response action.  Indeed, it appears that he did not even consider them.  Such unfounded speculation regarding the foreseeably affected parties at Forest Park is an insufficient basis to withstand summary judgment.[4]

3

Aviall maintains that it should nevertheless be excused for the insufficient public participation because additional participation

---

[4]Aviall argues that it should at least be able to recover the costs of its removal action—an early component of its overall response action—because the removal action did not affect anyone. *See generally Pub. Serv. Co. of Colo. v. Gates Rubber Co.,* 175 F.3d 1177, 1182 (10th Cir. 1999) (explaining difference between removal and remedial actions).  The court disagrees.  Although a limited removal action may generally affect fewer people than does a full-fledged remedial action, the interests of PRPs are almost always affected. *See* 55 Fed. Reg. at 8795.  It is undisputed that Aviall did not allow *any* PRP (including Cooper) to participate in any aspect of its removal action (Cooper was not notified of the Forest Park response action until after the removal action was complete).  And Aviall has not demonstrated why the PRPs would not have been affected by this action.

would not have changed anything. This argument, based on the premise that the public is generally uninterested in response actions and does not tend to provide much input, would materially undermine the public participation requirement, if it did not effectively read it out of the NCP altogether. The NCP does not support this result. *See* 55 Fed. Reg. at 8793 ("[M]eaningful public participation . . . is necessary to the achievement of a CERCLA-quality cleanup."). Aviall was obligated to provide foreseeably affected parties the *opportunity* to comment, even if in hindsight the comments would not have changed anything, because the policy choice has been made that such commentary generally plays a role that is beneficial to the cleanup process.

4

Next, Aviall contends that its *investigatory* costs (a portion of its overall response costs) are recoverable regardless whether it complied with the NCP. There are cases that support this proposition. *See, e.g., Vine Street, LLC v. Keeling,* 460 F.Supp.2d 728, 759 (E.D. Tex. 2006) ("[P]reliminary investigatory and monitoring costs . . . are recoverable irrespective of the NCP's public participation requirements." (footnote omitted)); *A.S.I., Inc. v. Sanders,* 1996 WL 91626, at *6 (D. Kan. Feb. 9, 1996) (same) (collecting cases). These decisions rest on the premise that "[t]he detailed NCP provisions governing other response actions cannot reasonably be applied to preliminary monitoring and evaluation of

a release of hazardous substances." *Vine Street,* 460 F.Supp.2d at 759 (internal quotation marks omitted). One court, although ultimately declining to follow them, explained these decisions with an observation that "[m]ost of [the NCP's] provisions regulate various aspects of the clean-up effort itself, and have no relevance to steps taken by private parties to investigate, monitor, and assess potential contamination." *Licciardi v. Murphy Oil USA, Inc.*, 1995 WL 45861, at *2 (E.D. La. Feb. 2, 1995) (citing examples).

But as the *Licciardi* court also observed, a complete immunization of investigatory response costs from the requirement of NCP consistency is contrary to the text of CERCLA. "It is well-established that costs of investigation, assessment, or monitoring of potential environmental harm qualify as 'costs of response' under CERCLA." *Id.* at *1 (citing 42 U.S.C. § 9601(25) (defining "response" to include "removal"); 42 U.S.C. § 9601(23) (defining "removal" to include "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances"); *Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1575 (5th Cir. 1988) (holding that investigatory costs are considered costs of response under CERCLA). And CERCLA plainly allows private parties to recover only those "costs of response" incurred "consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). It would thus contravene the plain language of the statute to hold that investigatory costs are exempt from NCP

compliance. *See Angus Chem. Co. v. Mallinckrodt Group, Inc.,* 1997 WL 280740, at *1 (W.D. La. Mar. 4, 1997) (declining on this basis to follow cases that hold that investigatory costs need not comply with the NCP). And it would "be neither wise nor appropriate" to do so. *Licciardi,* 1995 WL 45861 at *4.

*Licciardi* resolved the challenge of applying NCP requirements to preliminary investigations by holding that "investigatory costs will be considered 'consistent with the NCP' where they are incurred consistently with the purpose of the NCP." *Id.*[5] This approach tracks the framework that the court has already established for analyzing a party's compliance with the public participation requirement, *see supra* § V(B) (focusing on purpose of requirement), and the court applies it here. Accordingly, because Aviall has not shown that it achieved the NCP's purpose of allowing all parties who might foreseeably be affected to participate in the response at Forest Park (including the investigation), Aviall's attempt to recover investigatory costs must also fail.

Cooper's motion for summary judgment as to Aviall's NCP compliance at Forest Park is therefore granted. Aviall's Forest

---

[5]The court will assume *arguendo* that the public participation requirement (as opposed to other NCP provisions) is difficult to apply to investigations. It notes, however, the questionability of this argument in light of the NCP's express inclusion of 40 C.F.R. § 430(c) (governing community relations before and during remedial investigations) in its list of provisions potentially applicable to a private party response action. *See* 40 C.F.R. § 300.700(c)(6)(iii).

Park response action fails to substantially comply with the NCP, because Aviall has not demonstrated that all parties who might foreseeably be affected were given a meaningful opportunity to comment.

C

The court next considers the level of public participation at Carter Field. In 1996 Aviall discovered environmental contaminants in the groundwater at Carter Field and notified Cooper of its findings. Aviall then conducted an investigation and found that the contamination was contained within the property's boundaries, and that, provided the groundwater was not used as drinking water, it would not pose a health threat. After reviewing Aviall's report, the TNRC agreed and determined that a deed restriction on the future use of groundwater at Carter Field would suffice to remedy the situation. The restriction was then entered, and the response action was deemed "closed." Aviall did not consult with or notify anyone other than Cooper and the TNRC during the course of its response at Carter Field.

As the court has already explained, the dispositive question is whether all parties who might foreseeably be affected were given a meaningful opportunity to comment. The parties do not, however, discuss this issue with respect to Carter Field. The question was adequately briefed in the Forest Park context because Aviall argued that all affected parties were involved in the Forest Park cleanup

(and it opposed summary judgment on this basis alone).  There was no contention, however, that such involvement was *required* for all cleanups, which perhaps explains Aviall's silence in the context of Carter Field.  And Cooper largely focuses on comparing Aviall's conduct with the potentially applicable NCP regulations; it does not squarely address the issue whether all foreseeably affected parties were given a meaningful opportunity to comment.

Because this area of law is somewhat unsettled, and neither party has proposed or discussed the legal framework that this court has adopted above, *see supra* § V(B), the parties' failure to discuss this issue outside the Forest Park context is understandable.  And because it is not obvious (in light of the more limited nature of Aviall's Carter Field response) whether other parties besides Cooper were affected, or whether Cooper was given a meaningful opportunity to comment, the court will allow the parties to submit supplemental briefing on these issues.

D

Finally, the court turns to Aviall's Love Field response. Aviall discovered groundwater contamination at Love Field in 1996 and notified Cooper of its findings.  It then conducted a remedial investigation between March 1996 and February 1997, which culminated in a June 1997 report.  The investigation revealed that 16 downgradient properties were possibly affected by the contamination, and Aviall notified the respective property owners in November 1997.

In 1999 Aviall published newspaper notices of the response and made its investigatory reports available for public review. Between August 1999 and July 2003, Aviall distributed local neighborhood newsletters concerning the response action and onsite activities. In 2002 it finalized and implemented a community relations plan that was designed to keep property owners apprised of its progress. At the end of 2002, Aviall published notice of a public meeting that was to be held in December 2002 for the purpose of discussing its proposed remedial plan, and it announced a public comment period that would be held open until roughly one week after the meeting. At around the same time, Aviall submitted its proposed remedy to the TNRC for approval. The TNRC approved the proposal (subject to certain comments and admonitions) shortly before the public meeting was held.

Cooper alleges two deficiencies in the public participation at Love Field. First, it maintains that Aviall did not adequately seek comment regarding the remedial investigation that occurred from March 1996 through February 1997. Second, it contends that the public was not given a "meaningful" opportunity to comment on Aviall's remedy selection because the public meeting held at the end of 2002 was merely a "sham."

Concerning the first argument (regarding the remedial investigation), the parties are again silent on the question whether all foreseeably affected parties were given a meaningful opportunity

to comment.  The court will therefore afford the parties an opportunity to submit supplemental briefing on this issue.

With respect to the second argument (regarding Aviall's remedy selection), the court denies summary judgment.  Cooper maintains that Aviall's public meeting was "meaningless" because the TNRC had already approved Aviall's proposed remedy, but the effect of the TNRC's approval was simply to make the proposed remedy available to Aviall (subject to certain comments and admonitions), and did not dictate that remedy.  *See* P. Apr. 11, 2008 App. 5009-12 (TNRC Letter of Approval).  The cases that Cooper cites are distinguishable because implementation of the remedy in those cases began before the public meeting, or because the remedy decision had already been finalized by a consent judgment.  *See Reg'l Airport Auth.,* 460 F.3d at 708 (holding that public meetings held *after* implementation of final remedial action were not "meaningful," and that the only public meetings held before remedial action were not meaningful because they did not discuss selection of remedy); *Union Pac.,* 215 F.3d at 837-38 (holding that public meetings did not allow meaningful opportunity for comment on remedy selection, where first did not even discuss issue, and second was held after plaintiff had already begun an "early and essential step" in remediation process); *Pierson Sand,* 1996 WL 338624, at *3-*4 (holding that public meetings were not adequate where first was held without sufficient notice, and second was held after remedy was already selected by means of

- 43 -

consent judgment). Thus the court declines to hold, as a matter of law, that Aviall failed to afford a meaningful opportunity for comment on its proposed remedy.

Cooper's motion for summary judgment is denied with respect to Aviall's non-investigatory response costs at Love Field.

E

In sum, the court grants Cooper's motion for summary judgment as to Aviall's claim for recovery of response costs incurred at Forest Park, and it denies the motion with respect to Aviall's costs at Love Field that do not include the remedial investigation. The court directs the parties to submit supplemental briefing that addresses whether Aviall's response costs at Carter Field, and its remedial investigation costs at Love Field, are recoverable under CERCLA. The briefing should focus on the question whether all parties who might foreseeably be affected were given a meaningful opportunity to comment.

VII

The court now considers Aviall's motion for partial summary judgment regarding CERCLA liability.

A

Applying the foregoing decisions to Aviall's motion, *see supra* § VI(A)-(D), the court denies the motion to the extent Aviall seeks to recover response costs incurred in the Forest Park response. These costs are not recoverable from Cooper under CERCLA. The court

defers a final decision on the recoverability of Aviall's response costs arising from Carter Field, and its remedial investigation costs arising from Love Field, pending its consideration of supplemental briefing.[6]

B

1

As to its claim for the other response costs incurred for Love Field, Aviall is entitled to partial summary judgment establishing CERCLA liability if it proves:

> (1) that the site in question is a "facility" as defined in § 9601(9); (2) that the defendant is a responsible person under § 9607(a); (3) that a release or a threatened release of a hazardous substance has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs.

*Amoco Oil*, 889 F.2d at 668. Because Aviall will bear the burden of proof at trial on this claim, to obtain summary judgment, it "must establish 'beyond peradventure all of the essential elements of the claim [.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This court has noted that the "beyond peradventure" standard is "heavy." *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.).

---

[6]The court addresses the recoverability of future costs *infra* at § VII(B)(3).

Cooper maintains that Aviall must establish consistency with the NCP before obtaining partial summary judgment as to liability. The court disagrees. *See Amoco Oil,* 889 F.2d at 672 (first granting partial summary judgment on liability issue before evaluating NCP compliance). And Cooper's contrary interpretation of *Amoco Oil* lacks force. Notably, every other decision that the court has located agrees with this court's reading of *Amoco Oil. See, e.g., Vine Street,* 460 F.Supp.2d at 758-59 ("CERCLA requires that a private plaintiff's response costs be consistent with the NCP to the greatest extent possible. This is not an element of CERCLA liability, but a factual issue affecting which response costs Vine Street may recover." (citing *Amoco Oil*, 889 F.2d at 668; internal citations and quotation marks omitted)); *Am. Special Risk Ins. Co. v. City of Centerline*, 2002 WL 1480821, at *12 (E.D. Mich. June 24, 2002) ("[T]he issue of consistency with the NCP is separate from the issue of liability." (citing *Amoco Oil,* 889 F.2d at 668)); *G.J. Leasing Co. v. Union Elec. Co.*, 825 F. Supp. 1363, 1379 (S.D. Ill. 1993) ("This Court interprets the Fifth Circuit to say that a prima facie case may be made without proof that the plaintiff's response costs are consistent with the NCP."), *vacated in part on other grounds*, 839 F. Supp. 21 (S.D. Ill. 1993); *Trinity Indus., Inc. v. Dixi Carriers, Inc.*, 1993 WL 268430, at *12 (E.D. La. July 14, 1993) ("[C]onsistency with the NCP is not part of a CERCLA *prima facie*

case, but rather limits the amount of damages which the plaintiff is entitled to recover." (citing *Amoco Oil*, 889 F.2d at 672)).

Cooper cites *Southern Pacific Transportation Co. v. Voluntary Purchasing Groups, Inc.,* 1997 WL 457510 (N.D. Tex. Aug. 7, 1997) (Sanders, J.), in which the court listed NCP compliance as an element of CERCLA liability. It is doubtful that this was deliberate, however, because NCP compliance was not even in issue in the case. *See id.* And while it is true that the court cited *Amoco Oil,* the list of elements appears to have been derived from an Eleventh Circuit decision that was also cited. *See id.* at *5 (citing *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496-97 (11th Cir. 1996)).

Cooper correctly points out that other circuits differ with the approach taken in *Amoco Oil. See, e.g., Redwing Carriers,* 94 F.3d at 1496 n.8 ("Courts are split on whether a CERCLA plaintiff must demonstrate consistency with the NCP to obtain a partial summary judgment on a defendant's 'liability' under CERCLA.") (citing *Amoco Oil* as one answering in the negative). But neither this, nor Cooper's argument about the language of § 107, provides a basis for departing from binding Fifth Circuit precedent.

3

Accordingly, the court grants partial summary judgment establishing that Cooper is liable for the response costs at Love Field, except for those regarding the remedial investigation. The

court also grants Aviall's request for declaratory judgment as to any future costs that are consistent with the NCP and that were incurred at Love Field, Carter Field, and Forest Park. The Seventh Circuit has explained the rationale for awarding declaratory judgments in private party actions under CERCLA:

> There is an issue of prematurity concerning the allocation of the clean-up costs that [a plaintiff] has not yet incurred. *United States v. Hardage*, 982 F.2d 1436, 1445 (10th Cir. 1992), holds, however, that such an allocation is proper. It economizes on judicial time, in much the same way that awarding damages for both past and future losses economizes on judicial time in a tort case, and it also lets the parties know at the earliest opportunity where they stand. It is true that their cooperativeness in doing the actual clean-up is a relevant equitable factor that cannot be evaluated until the clean up is complete. But this concern can be accommodated, as *Hardage* suggests, by allowing the district court to make an all-at-once determination subject to the court's revisiting the issue should a failure of cooperation or some other unforeseen circumstance make adherence to the original determination inequitable.

*PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 616 (7th Cir. 1998) (some citations omitted). And nothing in today's ruling with respect to Aviall's *past* costs affects its right to recover *future* costs that are consistent with the NCP.

Finally, the court addresses Cooper's motion to dismiss Aviall's state-law claims.

Previously, the court declined in its discretion to exercise supplemental jurisdiction over Aviall's state-law claims because it had dismissed Aviall's federal-law claims. *See Aviall I,* 2000 WL 31730, at *5 (dismissing state-law claims without prejudice (citing 28 U.S.C. § 1367(c)(3) and *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)); *Aviall II,* 2006 WL 2263305, at *10 ("As in [*Aviall* I], having dismissed Aviall's federal question claims on the merits, the court declines to exercise supplemental jurisdiction over its remaining state-law claims and dismisses them without prejudice."). Cooper maintains that Aviall is precluded by the Supreme Court's instructions and by the Fifth Circuit's mandate from reasserting the dismissed claims and by Aviall's failure to appeal this court's decision to decline to exercise supplemental jurisdiction and its dismissal of the claims.[7] The court disagrees.

In *Aviall I* and *Aviall II* the court in its discretion dismissed Aviall's state-law claims without prejudice because all of Aviall's federal-law claims had been dismissed and the parties are not diverse citizens. *See Aviall I,* 2000 WL 31730, at *5; *Aviall II,* 2006 WL 2263305, at *10. Although these decisions left Aviall free to pursue the claims in state court, they also effectively conferred

---

[7]Cooper does not seek dismissal of these claims on the merits.

on Aviall the option of asserting them again in this court if the court's dismissal of the federal-law claims was reversed on appeal. Because the dismissal of the state-law claims was inextricably intertwined with the dismissal of the federal-law claims, it followed that if the rationale for dismissing the federal-law claims fell away, the predicate for dismissing the state-law claims did as well. Although Aviall could have appealed the dismissal of the state-law claims, it could also have sought——as it did——to overturn the dismissal of the federal-law claims and then sought reinstatement of the state-law claims, which had been dismissed without prejudice.

Nor is Cooper correct in suggesting that there were also other grounds——that Aviall failed to appeal——for dismissing the state-law claims. The court's discussion in *Aviall I* was merely an explanation of reasons for exercising its discretion under 28 U.S.C. § 1367(c)(3), and did not purport to establish independent grounds for dismissal. *Aviall I,* 2000 WL 31730, at *5 ("[N]either side . . . would suffer prejudice by now litigating the remaining state-law claims in a Texas tribunal *following dismissal of the federal lawsuit*." (emphasis added)).[8]

---

[8]Cooper also argues that the Supreme Court's decision in *Cooper Industries* mandates that this court focus *exclusively* on federal-law issues on remand. Nothing in the Supreme Court's opinion, however, supports this assertion. *See Cooper Indus.*, 543 U.S. at 169

Because the court's order of dismissal in *Aviall II* has been vacated, and because components of Aviall's federal-law claims survive today's decision, Cooper's motion to dismiss Aviall's state-law claims is denied.

IX

A

In sum, the court grants Cooper's November 14, 2005 motion for summary judgment to the extent of dismissing Aviall's CERCLA § 107(a) claim for past response costs incurred at Forest Park. It also grants the motion as to all CERCLA claims related to the Lemmon Terminal, and as to all of Aviall's CERCLA- and federal common law-based claims (as to all four properties) for contribution. The court denies the motion with respect to Aviall's claim for past response costs at Love Field that do not pertain to the remedial investigation, and future response costs. As set forth below, the court directs the parties to submit supplemental briefing concerning the recoverability of any past response costs incurred at Carter Field and the remedial investigation costs incurred at Love Field. The court grants in part and denies in part Cooper's March 11, 2008 motion to strike Zelikson's testimony. The court denies Cooper's July 22, 2005 motion to dismiss Aviall's state-law claims. The court grants Aviall's November 14, 2005 motion for partial summary judgment on CERCLA liability to extent of holding that Aviall is entitled to recover past response costs (except for those incurred

in the remedial investigation), in an amount to be determined at trial, incurred in the Love Field cleanup. As set forth below, the court directs the parties to submit supplemental briefing concerning the recoverability of remedial investigation costs incurred at Love Field and any past response costs incurred at Carter Field.[9] It also grants a declaratory judgment that Aviall is entitled to recover future response costs at Forest Park, Carter Field, and Love Field, subject to the court's right to reconsider the matter should a failure of cooperation or some other unforeseen circumstance make adherence to this determination inequitable. Aviall's motion is otherwise denied.

B

Within 30 days of the date of this memorandum opinion and order, Aviall and Cooper may each file a supplemental brief, and any supporting appendix, that addresses the issues on which the court has directed supplemental briefing. Absent court approval, a brief must not exceed 25 countable pages. Within 15 days of the date an opposing party's supplemental brief is filed, Aviall and Cooper may

_____

[9]Aviall urges the court to consider whether to appoint a special master over damages when it addresses Aviall's November 16, 1998 motion to bifurcate. P. May 9, 2008 Reply Br. 25. That motion, however, was denied without prejudice on January 15, 1999. If it wishes, Aviall may file a new motion to bifurcate in which it urges the appointment of a special master. But at present, the court denies Aviall's suggestion that a special master be appointed, without prejudice to reconsidering that decision under the standards of Rule 53(a)(1).

each file a supplemental reply brief (but not additional evidence).

The supplemental reply brief must not exceed 15 countable pages.

**SO ORDERED.**

August 11, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE