IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AVIALL SERVICES, INC., | § | |
| | § | |
| Plaintiff- | § | |
| counterdefendant, | § | |
| | § | Civil Action No. 3:97-CV-1926-D |
| VS. | § | |
| | § | |
| COOPER INDUSTRIES, LLC, | § | |
| | § | |
| Defendant- | § | |
| counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

In this environmental cleanup litigation, the court addresses the parties' motions for partial summary judgment concerning certain of plaintiff-counterdefendant's state-law claims and one of defendant-counterplaintiff's state-law counterclaims. As with other motions that the court has decided in this case, some of the questions presented involve issues of nascent law. For the reasons that follow, the court grants in part and denies in part both parties' motions.

I

This protracted lawsuit is the subject of several prior opinions, including *Aviall Services, Inc. v. Cooper Industries, Inc.*, 572 F.Supp.2d 676 (N.D. Tex. 2008) (Fitzwater, C.J.) ("*Aviall III*"). The court will therefore limit its discussion of the background facts and procedural history to what is pertinent to today's decision.

Before 1981, defendant-counterplaintiff Cooper Industries,

LLC, ("Cooper") (then known as Cooper Industries, Inc.) owned four sites at which it operated an aircraft engine maintenance business: Forest Park Facility ("Forest Park"), Love Field Facility ("Love Field"), Carter Field Facility, and Lemmon Terminal Facility ("the Facilities"). In 1981, Cooper sold the business to plaintiff-counterdefendant Aviall Services, Inc. ("Aviall"). Aviall later discovered that both Aviall and Cooper had contaminated the soil and groundwater at the Facilities with hazardous and non-hazardous contaminants. *Aviall III*, 572 F.Supp.2d at 682. During the period when Aviall was the owner, it notified the Texas Natural Resource Conservation Commission ("TNRCC") of the pollution.[1] The TNRCC advised Aviall that it was violating state environmental laws, directed it to clean up the sites, and threatened enforcement action if Aviall failed to undertake remediation. Aviall voluntarily cleaned up the properties, and neither the U.S. Environmental Protection Agency, the TNRCC, nor any other governmental entity has taken judicial or administrative measures against Aviall or Cooper. No third party has sued Aviall or Cooper concerning any of the conditions of the Facilities.

Aviall seeks relief in this suit on various federal-law claims, which the court has addressed in prior opinions. Aviall also sues Cooper to recover on the following state-law claims:

---

[1]The TNRCC is now the Texas Commission on Environmental Quality ("TCEQ"). The court will refer to it as the TNRCC, by which it was known at times pertinent to this litigation.

breach of contract; breach of express warranty; contractual indemnification; declaratory judgment; contribution under § 361.344(a) of the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ann. (Vernon 2001) ("SWDA"); contribution under § 26.3513(j) of the Texas Water Code, Tex. Water Code Ann. (Vernon 2008) ("TWC"); common law contribution; quantum meruit; and attorney's fees. Cooper counterclaims for breach of contract, alleging that Aviall breached the parties' release of liability, in which the parties agreed not to bring suit on liabilities that had been released.

Cooper moves for summary judgment on each of Aviall's state-law claims and on its counterclaim. Aviall moves for partial summary judgment establishing its right to recover on its SWDA, TWC, breach of contract, contractual indemnification, and quantum meruit claims.[2]

## II

The parties' summary judgment burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial. In most respects, Cooper moves for summary judgment on claims as to which Aviall will bear the burden

---

[2]Aviall does not seek summary judgment on its claims for common law contribution (which it is withdrawing, see infra § III), breach of express warranty, declaratory judgment, or attorney's fees. Its motion for partial summary judgment concerning its claim for quantum meruit is made in the alternative.

of proof.  As to these claims, Cooper need only point the court to the absence of evidence of any essential element of Aviall's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once Cooper does so, Aviall must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Aviall's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Aviall's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if Aviall fails to meet this burden.  *See Little*, 37 F.3d at 1076.

Aviall and Cooper also move for summary judgment on claims and defenses for which they will bear the burden of proof at trial.  To be entitled to summary judgment on such a claim or defense, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting

- 4 -

*Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).[3]

## III

Cooper moves for summary judgment dismissing Aviall's claim for common law contribution. Citing *Casa Ford, Inc. v. Ford Motor Co.*, 951 S.W.2d 865 (Tex. App. 1997, pet. denied), Cooper argues that Texas common law does not recognize such a right. Aviall concedes in response "that Texas common-law contribution has been replaced by statutory provisions," P. July 20, 2009 Br. 49, and it withdraws the claim. The court therefore denies Cooper's motion without prejudice as moot to the extent it relates to this withdrawn claim.

---

[3]In support of certain claims, Aviall relies on the discovery rule to avoid the preclusive effect of the statute of limitations. In Texas court, Cooper must negate the discovery rule to establish the affirmative defense of limitations. But it is unclear whether, in the Fifth Circuit, the Texas rule applies to claims decided in federal court. *See Achee v. Port Drum Co.*, 197 F.Supp.2d 723, 731 (E.D. Tex. 2002). One panel has applied the rule. *See Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.,* 273 F.3d 644, 649 (5th Cir. 2001). Other panels have held that the party asserting the discovery rule has the burden of establishing it. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 214 (5th Cir. 1999); *FDIC v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993). This court followed *Shrader & York* in *RTC v. Bright*, 872 F. Supp. 1551, 1569 (N.D. Tex. 1995) (Fitzwater, J.) (addressing discovery rule) (citing *Shrader & York*, 991 F. 2d at 220). Because, as explained below, Cooper fails on its SWDA limitations defense and prevails on Aviall's contract claims regardless who has the burden on the discovery rule, the court need not predict how this uncertainty will be resolved.

IV

Aviall seeks summary judgment establishing its claim for contribution under § 361.344(a) of the SWDA. Cooper moves on several grounds for summary judgment dismissing this claim.

A

To recover under § 361.344(a), Aviall must prove the following essential elements:

> (1) [Cooper] is a "person responsible for solid waste" as defined in [Tex. Health & Safety Code Ann. §] 361.271; (2) the TNRCC approved [Aviall's] removal or remedial action; (3) the action was necessary to address a release or threatened release of solid waste; (4) the costs of the action were reasonable and necessary; and (5) [Aviall] made reasonable attempts to notify [Cooper] of both the release and [Aviall's] intent to take steps to eliminate the release.

*R.R. Street & Co. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232, 240 (Tex. 2005) ("*R.R. Street II*") (citing Tex. Health & Safety Code Ann § 361.344).

B

Cooper argues that Aviall's SWDA contribution claim is time-barred because the claim accrued as soon as Aviall knew the facts that gave rise to Cooper's potential liability—i.e., as soon as Aviall became aware of the contamination. Cooper maintains that this rule is necessary to prevent a party from indefinitely delaying recovery under the SWDA. It asserts that, for Forest Park and Love Field, Aviall had relevant knowledge as early as when it

purchased those facilities in 1981, because the knowledge of Cooper's former employees——whom Aviall retained after it purchased the Facilities——was imputed to Aviall.   Cooper posits that Aviall became aware of the contamination at all four Facilities through a series of reports from 1987 to 1991.   It therefore argues that the limitations period[4] expired before the parties entered into a tolling agreement in 1996,[5] and that Aviall's SWDA claim is time-barred.

Aviall responds that its claim did not accrue until facts supporting each element came into existence: i.e., in 1997, when Texas amended the SWDA.   Before 1997, § 361.344 enabled a party to seek contribution only if the party was under a court injunction or administrative order.   *See* Tex. Health & Safety Code Ann. § 361.344(a) (Vernon 1989) (repealed Sept. 1, 1997).   Aviall asserts that it has never been subject to any order regarding contamination at the Facilities.   It maintains that its cause of

---

[4]Cooper argues that because the SWDA contains no explicit limitations period, the court must look to the Texas general statutory limitations provisions.   It contends that the SWDA claim is governed by Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002), which provides a two-year limitations period for causes of action based on trespass.   Aviall responds that its claim is governed by Texas' general four-year statute of limitations, contained in Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon Supp. 2008).   The court need not determine which applies because, under Cooper's theory, more than four years elapsed between the time Aviall's claim arose and when it filed suit.

[5]The parties entered a tolling agreement on the SWDA claims on August 22, 1996, before Aviall filed suit on August 7, 1997.

- 7 -

action could not have accrued until 1997, when Texas amended the SWDA to allow a party to seek contribution so long as it was pursuant to an agreement with the TNRCC.

Cooper maintains that the TNRCC would have placed Aviall under an order had Aviall so requested, and therefore that a remedy was available even under the pre-1997 SWDA.  Cooper reasons that, because a remedy was available before 1997, Aviall's claim accrued before 1997.  Alternatively, Cooper posits that the 1997 amendment should not be applied retrospectively to require Cooper to contribute to cleanup costs incurred before the amended statute took effect.

Aviall replies that it had no duty to seek an order from the TNRCC, that the 1997 amendment should be considered remedial or procedural and applied retroactively, and that the amended version of the SWDA supports Aviall's recovery of expenses incurred before the amended version took effect.

C

To decide whether Aviall's contribution claim is time-barred, the court must first determine the limitations period commenced on the date on which contamination merely existed at a facility, the date on which Aviall actually or constructively knew of the contamination, or the date a legal remedy became available to

Aviall.[6]

"Generally, a cause of action accrues and limitations begins to run when facts exist that authorize a claimant to seek judicial relief." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 (Tex. 2004). "Stated another way, a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury." *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 634 (Tex. App. 2006, pet. denied) (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)). "The fact that damage may continue to occur for an extended period after denial does not prevent limitations from starting to run. Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff." *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). "There are, however, exceptions to this rule. The discovery rule, for example, applies where the plaintiff did not and could not know of his injury at the time it occurs." *Potter v. Kaufman & Broad Home Sys. of Tex., Inc.*, 137 S.W.3d 701, 704 (Tex. App. 2004, no pet.)

---

[6]The parties dispute whether Aviall asserts one or multiple causes of action. Aviall contends that its cleanup of the four Facilities consisted of discrete remediation programs, and that each program presents an independent claim. Cooper argues that Aviall's remediation program must be viewed as a whole, and that knowledge of contamination at one facility put it on inquiry notice about contamination elsewhere. Cooper argues on this basis that limitations commenced for all cleanup actions simultaneously. Given the reasoning on which the court relies, it need not resolve this dispute.

(citing *Moreno*, 787 S.W.2d at 351).

Cooper contends that the limitations period commenced when Aviall learned of the contamination.  It posits that Aviall had constructive knowledge of contamination at two properties when it purchased the Facilities.  And it asserts that, under *Potter*, a party's cause of action accrues when it knows of contamination. The *Potter* court considered, however, the statute of limitations for causes of action (breach of contract, negligence, and fraud) that were available to the plaintiff at the time of the injury. *See Potter*, 137 S.W.3d at 704 n.4.  In 1981, when Aviall purchased the Facilities, the SWDA did not provide for recovery by someone not under a court injunction or an administrative order. Similarly, § 361.344 also required the plaintiff to have undertaken an action to eliminate a release or threatened release.   Tex. Health & Safety Code Ann. § 361.344(a) (Vernon 1989) (repealed Sept. 1, 1997).  Aviall had certainly not undertaken an action to eliminate a release in 1981, when it had just purchased the Facilities.  And although Cooper and Aviall dispute whether Aviall had the duty and ability to obtain an administrative order from the TNRCC, Aviall, unlike the plaintiff in *Potter*, could not have recovered contribution damages had it filed suit on the date it learned of the contamination, i.e., before the SWDA conferred a right of contribution on someone who was not under a court injunction or an administrative order.

Aviall argues that its cause of action accrued in 1997, when Texas amended § 361.344 to provide that a plaintiff merely be a party to an agreement with the TNRCC rather than the subject of a court injunction or an administrative order.  In 1997, Aviall was already subject to agreements to remediate contamination at the Facilities.  The court holds that the limitations period could not have commenced on Aviall's claim before the SWDA was amended in 1997.  Before then, Aviall could not have sought contribution because all the facts necessary for recovery under the SWDA did not yet exist.  *See Schneider Nat'l Carriers*, 147 S.W.3d at 279. Specifically, there was no court injunction or administrative order compelling Aviall to clean up the Facilities.  Had Aviall pursued a contribution claim without the requisite injunction or order, a court would necessarily have rejected it.  *Cf. Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 160-61 (2004) (concluding that no cause of action was available under § 113(f)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") absent certain preconditions).  Under Texas law, a "cause of action does not exist until facts exist that authorize a person asserting the claim to seek relief in a court of competent jurisdiction."  *W.K. v. M.H.K.*, 719 S.W.2d 232, 236 (Tex. App. 1986, writ ref'd n.r.e.).  In *W.K.* a putative father's denial of paternity was deemed timely because it was asserted within four years of the enactment of a law that enabled him to deny paternity

by submitting blood tests. *Id*. at 236. The court reasoned that the limitations period could not have commenced until he had this statutory right. *Id*. The court therefore concludes that Aviall's contribution claim is not time-barred.

### D

Cooper also argues, however, that Aviall could have sought contribution under the pre-1997 version of the SWDA by arranging to be placed under the terms of an administrative order once it knew of the contamination. Cooper presents testimony from a TNRCC official that companies routinely petition to be placed under administrative orders and that the TNRCC frequently grants such requests.[7] Cooper maintains that Texas law generally prohibits a party from delaying the running of limitations by failing to take steps that it is capable of taking. Cooper therefore contends that Aviall's cause of action accrued, and limitations commenced, when Aviall had the ability to seek an administrative order. Aviall responds that it had no affirmative duty to seek such an order and that the limitations period did not begin until the 1997 amendment took effect.

Texas does not allow a plaintiff to delay the running of limitations by failing to take action that is within his power.

---

[7]On July 20, 2009 Aviall filed a motion to strike the declaration of this witness. Because the court holds that the limitations period did not begin until 1997, it denies the motion as moot.

"If the only act necessary to perfect a plaintiff's cause of action is one to be performed by him, and he is not under legal disability, then he cannot indefinitely suspend the running of limitations by delaying performance of the act." *Cent. Power & Light Co. v. State*, 410 S.W.2d 18, 25 (Tex. Civ. App. 1966, writ ref'd n.r.e.) (citing *Jackson v. Tom Green County*, 208 S.W.2d 115 (Tex. Civ. App. 1948, writ ref'd n.r.e.)).  Although it was within Aviall's power *to request* that an administrative order be issued, it was not within Aviall's power *to issue* the order.

Cooper relies on *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580 (Tex. 2002), to contend that limitations commenced before the 1997 amendment because Aviall was able to seek an order from the TNRCC requiring it to clean up the Facilities.  *Lubbock County*, however, is distinguishable.  In that case several bail bond companies sued to recover an illegally-assessed bond service charge imposed by the defendant county.  The pertinent question was whether a provision of the Local Government Code delayed the running of limitations until the plaintiff had presented the claim.  *Id.* at 584.  Under the Code, a person could not sue a county unless he first presented the claim and, after 60 days had elapsed, county officials had neglected or refused to pay all or part of the claim.  *See* Tex. Loc. Gov't Code Ann. § 89.004(a) (Vernon 2008).

Trammel's, the named plaintiff in *Lubbock County*, served

- 13 -

notice of its claim in June 1993, received no response, and filed suit two months later. *Id.* at 581-82. The trial court held that Trammel's could not collect for fees paid before June 1991 because the two-year statute of limitations had run as to past expenses. *Id*. Trammel's argued in the Texas Supreme Court that its claim did not accrue until the statutory condition——presentment and denial of its claim——had been met. *Id*. at 584-85. The Texas Supreme Court held that Trammel's claim accrued when it paid the illegal service charge to the county, because the injury occurred then, not when the claim was presented to and rejected by the county. *Id*. at 585. The court reasoned that tying the accrual of the claim to when the plaintiff gave notice would allow it to suspend indefinitely the running of limitations. This would conflict with the Texas rule that limitations begins when an injury is incurred. *Id*.

*Lubbock County* is distinguishable because it involved a procedural requirement that operated independently of the underlying claim. Unlike the instant case, the requirement that a party suing the county present the claim before filing suit was not a specific element of the claim. In *Lubbock County* two additional bail bond companies joined the lawsuit in March 1994, but they did not present their claims to the county until August 1997. *Id*. at 582. The Texas Supreme Court addressed whether the claims were barred based on their failure to present the claims. *Id*. at 584. It held that the notice requirement was non-jurisdictional, so the

proper remedy was to abate their suits until the notice requirement was met, not to dismiss them. *Id*. In other words, prior notice was not an element of their claims.

Unlike the claims at issue in *Lubbock County*, in the present case the existence of a court injunction or an administrative order was a necessary element of an SWDA contribution claim before the statute was amended in 1997. Aviall could not have brought the claim until such an injunction or order was entered. While Aviall could have requested an injunction or order, it could not have obtained one unilaterally. In *Lubbock County* it was only necessary that the plaintiff present his claim; even if the county did not explicitly reject the claim, the plaintiff could have brought suit after 60 days of inaction. *See* Tex. Loc. Gov't Code Ann. § 89.004(a).

The statute of limitations commences when conditions are within the sole control of the plaintiff. *See Cent. Power & Light*, 410 S.W.2d at 25. Where a condition precedent requires some act on the part of someone other than the plaintiff, the limitations period does not begin to run until the condition is met. *See Moreno v. City of El Paso*, 71 S.W.3d 898, 902 (Tex. App. 2002, writ denied) (observing that "provisions found to extend the statute of limitations" include "provisions which impose a condition precedent before suit may be filed, but only where the required procedure involves some entity other than the plaintiff and the resulting

delay is beyond the control of the plaintiff.") (internal citations omitted).  Although Aviall could have taken some steps to fulfill the condition precedent to recovery under the SWDA, not all of the required steps were within its power.  It could have requested an order from the TNRCC, but it could not have brought suit until the TNRCC issued the order.  The Legislature changed the process in 1997 to make § 361.344 more widely available; it presumably would not have done so had the same procedure already been available before the amendment was enacted.

E

Cooper also maintains that Aviall cannot rely on the 1997 amendment to the SWDA because it does not apply retrospectively.

1

Before 1997, Aviall undertook considerable cleanup efforts under agreements with the TNRCC or its predecessor.  Cooper argues that unless a statute is expressly made retrospective, it is presumed to be prospective, *see* Tex. Gov't Code Ann. § 311.022 (Vernon 2005), and that a retrospective construction of the 1997 amendment would enable a property owner to revive long-expired claims.

Aviall responds that the Texas presumption against retroactivity does not apply to its claim because the SWDA and the 1997 amendment are remedial.  It reasons that because CERCLA——the model for the SWDA to which Texas courts look when interpreting the

SWDA——allows retroactive application, the SWDA should as well.

2

"A statute is presumed to be prospective in operation unless expressly made retrospective." Tex. Gov't Code Ann. § 311.022 (Vernon 2005). "If there is any doubt, the intention will be resolved against retrospective operation of a statute." *Ex parte Abell*, 613 S.W.2d 255, 258 (Tex. 1981). Remedial statutes, however, are applied retroactively. *See Phil H. Pierce Co. v. Watkins*, 114 Tex. 153, 263 S.W. 905, 907 (1924) ("[R]emedial statutes are valid and control the litigation from the date they become a law, and all proceedings taken thereafter must be under the new law."); *In re Dep't of Protective & Regulatory Serv.*, 71 S.W.3d 446, 450 (Tex. App. 2002, orig. proceeding) (per curiam) ("If a statute is procedural or remedial in nature, '[i]t is the settled law that a litigant has no vested right in a remedy, and that remedial statutes are valid and control the litigation from the date they become a law, and all proceedings taken thereafter must be under the new law.'" (quoting *Phil H. Pierce Co.*, 263 S.W. at 907) (alteration in original)).

> A remedial statute is one which introduces a
> new regulation for the advancement of the
> public welfare or conducive to the public
> good, one enacted to afford a remedy, to
> improve and facilitate existing remedies, or
> one intended to correct defects, mistakes, and
> omissions in the laws of the State.

*Lukes v. Employees Ret. Sys. of Tex.*, 59 S.W.3d 838, 842 (Tex. App.

2001, no pet.) (quoting *Rey v. Acosta*, 860 S.W.2d 654, 657 (Tex. App. 1993, no writ)).

The purpose of the SWDA is "to safeguard the health, welfare, and physical property of the people and to protect the environment by controlling the management of solid waste."  Tex. Health & Safety Code Ann. § 361.002(a) (Vernon 2001).  It clearly introduced a new regulation for the advancement of public welfare.  The SWDA, like CERCLA, is accordingly remedial.  *See R.R. Street II*, 166 S.W.3d at 238;[8] *see also R.R. Street & Co. v. Pilgrim Enters., Inc.*, 81 S.W.3d 276, 291 (Tex. App. 2001) ("*R.R. Street I*") ("Because it is a remedial statute, we must give SWDA a liberal construction, rather than one that would defeat the very purpose for which it was enacted."), *rev'd on other grounds*, 166 S.W.3d 232 (Tex. 2005).  The 1997 amendment is similarly remedial; it was enacted to make it easier for property owners to voluntarily remediate contamination on their property, thus improving the existing remedy.

3

Texas prohibits the retrospective application of laws when doing so would deprive someone of a vested right.  *See* Tex. Const. Ann. art. I, § 16 (Vernon 2007) (providing that no retroactive law shall be made).  "A retroactive law literally means a law that acts

_____

[8]CERCLA similarly allows for retroactive application to response costs incurred before its enactment. *See United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 732-33 (8th Cir. 1987).

on things which are past." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002) (citing *DeCordova v. City of Galveston*, 4 Tex. 470, 475 (Tex. 1849)). "It is well settled in [Texas] that laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws, or create new obligations, impose new duties, or adopt new disabilities in respect to transactions or considerations past." *Ex parte Abell*, 613 S.W.2d at 260.

But changes to laws that do not affect vested rights do not offend the constitutional prohibition against retroactive laws. *See Rey*, 860 S.W.2d at 657. "[N]o litigant has a vested right in a statute or rule which affects remedy or is procedural in nature and which affects no vested substantive right." *Ex parte Abell*, 613 S.W.2d at 260. "Litigants have no vested rights in new rules of law, a mere expectancy based upon the anticipated continuation of an existing law, or mere remedies." *Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 206 (Tex. App. 2008, no pet.). Where a statute is procedural or remedial, it is valid and controls all proceedings occurring after its enactment (or effective date). *See Phil H. Pierce Co.*, 263 S.W. at 907.

4

Cooper had no vested right under the SWDA, so the retroactive application of the amendment does not violate the Texas Constitution. A right vests only if it is concrete and recognized

- 19 -

by law; it does not vest if it is merely expected based on the anticipation of the continuance of current laws.  *Ex parte Abell*, 613 S.W.2d at 261.

> [A] right, in a legal sense, exists, when, in consequence of the existence of given facts, the law declares that one person is entitled to enforce against another a given claim, or to resist the enforcement of a claim urged by another.  Facts may exist out of which, in the course of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right comes into existence there cannot be in law a right; and for this reason it has been constantly held that, until the right becomes fixed or vested, it is lawful for the lawmaking power to declare that the given state of facts shall not fix it, and such laws have been constantly held not to be retroactive in the sense in which that term is used.

*Id.* (quoting *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 253 (1887)).

Cooper had no vested right before 1997 not to be subjected to a claim for contribution under the SWDA.  It could have been sued for contribution, provided the party seeking this relief was under a court injunction or an administrative order.  Therefore, although the SWDA did not provide Aviall a remedy before 1997, neither did it excuse Cooper from contributing to costs incurred for removal or remediation actions.  Had Aviall sought recovery and Cooper challenged the absence of a court injunction or an administrative order, Cooper's defense would have nullified, without any change in

the law, had the TNRCC ordered a cleanup.

Cooper argues that the statute of limitations on Aviall's claim had expired by 1997, and that allowing the amendment to revive the limitations period would deprive Cooper of its limitations defense. Had the limitations period commenced and expired before the SWDA amendment took effect, Cooper would have had a vested substantive right that could not be taken away by retroactive amendment. *See Ex parte Abell*, 613 S.W.2d at 260 (citing *Wilson v. Work*, 122 Tex. 545, 62 S.W.2d 490 (1933)). But the limitations period had not expired, or even begun to run, in 1997, when the Legislature revised the SWDA. As the court has held above, the limitations period did not commence until all of the elements of Aviall's contribution claim had been met, which did not occur before the SWDA was amended in 1997. Cooper therefore had no vested limitations defense that the 1997 amendment abrogated. And retroactive application of the statute is not unconstitutional.

Aviall may therefore seek contribution under the SWDA, as amended in 1997, for its cleanup costs, despite the fact that its remediation efforts and the agreements with the TNRCC preceded the date when the amendment took effect.

F

Cooper also seeks summary judgment dismissing Aviall's SWDA contribution claim on the ground that Aviall did not make reasonable attempts to notify Cooper of its remediation efforts.

- 21 -

The SWDA requires that, to recover, "the person seeking cost recovery must have made reasonable attempts to notify the person against whom cost recovery is sought (1) of the existence of the release or threatened release and (2) that the person seeking cost recovery intended to take steps to eliminate the release or threatened release." Tex. Health & Safety Code Ann. § 361.344(c) (Vernon 2001). Cooper argues that this provision imposed a condition precedent on Aviall that Aviall could only have met by notifying Cooper before undertaking remediation efforts. Cooper acknowledges that Aviall notified it in 1995 and 1996 of the contamination at the various sites. But it posits that Aviall cannot recover under § 361.344 for any remediation undertaken before it gave notice. Aviall responds, *inter alia*, that its duty to notify Cooper did not arise until its cause of action accrued in 1997, after it had given Cooper notice.

Although no Texas court had so held, the court will assume that § 361.344 required Aviall to provide Cooper advance notice of its intention to undertake remediation activities at the Facilities. Although § 361.344(c) contained a notice requirement before it was amended in 1997, Aviall could not have brought a contribution claim against Cooper before 1997. *See* Tex. Health & Safety Code Ann. § 361.34(c) (Vernon 1989) (repealed Sept. 1, 1997). Section § 361.344(c) requires that Aviall have made reasonable attempts to notify Cooper of the release and that it

intended to eliminate the release. Requiring Aviall to have given Cooper notice prior to the date when the SWDA's contribution remedy became available to it, i.e., the date on which Aviall met the elements necessary for recovery, would have been unreasonable.[9] Were the court to dismiss Aviall's contribution claim based on lack of notice, it would indirectly undue its reasoning and conclusions above holding that the 1997 amendment to the SWDA first enabled Aviall to bring a contribution claim against Cooper.

Although the notice requirement applied to Aviall once the statute was amended in 1997, Aviall in fact gave Cooper notice of its remediation activities before that date, in 1995 and 1996. A reasonable jury could find that this notice was reasonable. Accordingly, Cooper is not entitled to summary judgment dismissing Aviall's SWDA contribution claim on this basis.

G

Cooper also contends that, if the court holds that Aviall can recover under the SWDA, Aviall cannot recover for non-hazardous waste. It maintains that § 361.344 only affords contribution for parties who conduct "a removal or remedial action." It argues that

---

[9]By holding that Aviall was not required to give Cooper notice until the 1997 amendment took effect, the court is not retrospectively applying the amended version of the SWDA. The same interpretation of the notice provision would apply to the pre-1997 version of the SWDA. A property owner was not required to give notice until the elements for recovery had been met. Before the 1997 amendment, that meant that the owner was not required to give notice until placed under a court injunction or an administrative order.

§ 361.003 defines these terms to apply only to actions addressing "hazardous waste," which is defined by reference to federal law; that many of Aviall's expenditures resulted from cleanup of substances that are not considered "hazardous waste"; and that it should be granted summary judgment that it is not required to contribute to these costs. Aviall responds that, under *R.R. Street II*, § 361.344 provides a right of contribution for the costs of cleaning up *solid* waste.

By statute, Aviall can only recover contribution for its cleanup expenses if it conducted "a removal or remedial action." Definitions for terms used in the SWDA are contained in § 361.003. Section 361.003(29) defines "remedial action" to mean

> an action consistent with a permanent remedy taken instead of or in addition to a removal action in the event of a release or threatened release of a hazardous waste into the environment to prevent or minimize the release of hazardous waste so that the hazardous waste does not migrate to cause an imminent and substantial danger to present or future public health and safety or the environment.

The statute then lists specific actions that are included in "remedial action."

The SWDA defines the term "removal" in § 361.003(30), in pertinent part, as follows:

- 24 -

"Removal" includes:

(A) cleaning up or removing released hazardous waste from the environment;

(B) taking necessary action in the event of the threat of release of hazardous waste into the environment;

(C) taking necessary action to monitor, assess, and evaluate the release or threat of release of hazardous waste;

(D) disposing of removed material;

. . .

(I) taking any other necessary action to prevent, minimize, or mitigate damage to the public health and welfare or the environment that may otherwise result from a release or threat of release.

Section 361.003(12), in turn, defines "hazardous waste":

"Hazardous waste" means solid waste identified or listed as a hazardous waste by the administrator of the United States Environmental Protection Agency under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Section 6901 et seq.).

"Hazardous waste" is thus a subset of "solid waste." "Solid waste" necessarily includes types of waste that are not hazardous. Cooper maintains that "courts should not be bound up with suits between parties for removal of [such] garden-variety rubbish or trash." D. June 1, 2009 Br. 36.

As Aviall points out, the Texas Supreme Court has indicated that § 361.344 allows private parties to recover cleanup costs for

- 25 -

removing solid waste.

> The purpose of SWDA . . . is to safeguard the
> health, welfare, and physical property of the
> people and to protect the environment by
> controlling the management of solid waste,
> including accounting for hazardous waste that
> is generated . . . .   SWDA's cost-recovery
> provisions are structured similarly to those
> in CERCLA, which the federal courts have given
> a liberal interpretation consistent with
> Congress's overwhelmingly remedial statutory
> scheme.   We in turn will interpret SWDA
> liberally to give effect to its remedial
> purpose.   In accordance with that purpose,
> SWDA, like CERCLA, provides mechanisms for the
> clean-up *of solid waste* and for both
> governmental entities and private parties to
> recover clean-up costs from those responsible
> for the waste.   *See, e.g.*, Tex. Health &
> Safety Code §§ 361.272, .197, .344; 42 U.S.C.
> §§ 9607, 9613(f).

*R.R. Street II*, 166 S.W.3d at 238 (emphasis added) (some citations

and quotation marks omitted).   Of the three SWDA sections cited by

the court, § 361.344 is the only one that addresses cost recovery

by private parties.   Section 272 sets out the state's ability to

require cleanup, and § 361.197 refers to the state's ability to

recover for cleanup costs that it incurs.   Further, the court

clearly understood the distinction between "hazardous waste" and

"solid waste" and therefore used "solid waste" intentionally.   The

court noted that the

> SWDA subjects those responsible for "solid
> waste" to liability and that its definition of
> "solid waste" is similar to that in [the
> Resource Conservation and Recovery Act].
> CERCLA, on the other hand, imposes potential
> liability on parties who arrange for the
> disposal or treatment of "hazardous

- 26 -

substances," which is defined differently.
*Id.* at 238 n.5 (citations omitted).

Although the question whether § 361.344 applies to non-hazardous solid wastes was not before the court in *R.R. Street II*, the court's observation is consistent with *R.R. Street I*. In determining whether the operator of the dry cleaning plant could obtain contribution under § 361.344, the Texas Court of Appeals stated that the operator must establish that "the remedial actions are necessary to address a release or threatened release of *a solid waste* into the environment." *R.R. Street I*, 81 S.W.3d at 299 (emphasis added) (internal quotation marks omitted). In *R.R. Street II* the court considered what acts give rise to arranger liability under the SWDA. *R.R. Street II* did not question the court of appeals' interpretation of the other elements required for contribution. Noting that it was ordering a new trial, the Texas Supreme Court stated in *R.R. Street II* that it would not consider whether evidence of those elements was conclusive and therefore able to support summary judgment. *See R.R. Street II*, 166 S.W.3d at 253. *R.R. Street I* therefore remains the only Texas court interpretation of the relevant provision and the best indication of how the Texas Supreme Court would decide this question. *See Vine Street, LLC v. Keeling*, 460 F.Supp.2d 728, 755 & n.111 (E.D. Tex. 2006) (citing *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). The court must follow that

ruling unless it is convinced that the Texas Supreme Court would rule otherwise. *See, e.g., First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (holding that, when making such a guess under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court is bound by an intermediate state appellate court decision unless "convinced by other persuasive data that the highest court of the state would decide otherwise.").

*R.R. Street I* and *R.R. Street II* do not, as Cooper maintains, run afoul of the SWDA. Tex. Health & Safety Code Ann. 361.272(a) (Vernon 2001) allows the TNRCC to "issue an administrative order to a person responsible for solid waste if it appears that there is an actual or threatened release of solid waste that presents an imminent and substantial endangerment to the public health and safety or the environment." This order may "require the person to take any action necessary to provide and implement a cost effective and environmentally sound remedial action plan designed to eliminate the release or threatened release." *Id.* § 361.272(b)(2). Previously, such an order (or a court injunction) allowed a party to seek contribution under § 361.344. *See* Tex. Health & Safety Code Ann. § 361.344(a) (1989) (repealed Sept. 1, 1997) (limiting remedy to "a person subject to a court injunction or an administrative order"). If Cooper's argument were correct, the TNRCC could order a cleanup of non-hazardous, solid waste, even though the site owner would be prevented from seeking contribution.

Texas amended the cost-recovery provision of the SWDA in 1997 to make it easier for persons conducting cleanup operations to seek contribution.  See Act of June 17, 1997, 75th Leg., R.S., ch. 793, § 14, 1997 Tex. Sess. Law Serv. (Vernon) (codified at Tex. Health & Safety Code § 361.344(a)).  In doing so, the Texas Legislature did not make the remedy of § 361.344 available to anyone who simply spruces up a site.  Under the current version of § 361.344, a party may seek contribution if its cleanup is first "approved by the [TNRCC]." Tex. Health & Safety Code Ann. § 361.344(a).  The cleanup must be of a "release" or a "threatened release," and it must be "necessary" to address it.  The SWDA defines "release" broadly to include "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment."  Tex. Health & Safety Code Ann. § 361.003(28).  Although the court in which the SWDA contribution claim is brought has broad equitable power to decide whether to allow contribution for specific expenses, the court can only award contribution for expenses it finds reasonable and necessary.  *See* Tex. Health & Safety Code Ann. § 361.344.  It is dubious that courts would become embroiled in litigation over garden-variety rubbish or trash.

Finally, the SWDA allows contribution only if a cleanup is a "a removal or remedial action."  By definition, a cleanup can only be a "remedial action" if it addresses hazardous waste.  *See* Tex.

Health & Safety Code Ann § 361.003(29). "Removal," however, is not so limited. Section 361.003(30) provides that "removal" "includes" certain listed examples, but it does not confine the term to those examples. Further, one of the examples arguably covers Aviall's conduct. Section 361.003(30)(I) defines "removal" to include "taking any other necessary action to prevent, minimize, or mitigate damage to the public health and welfare or the environment that may otherwise result from a release or threat of release." This example is not limited to hazardous waste; cleanup can be a removal so long as it is necessary and the contaminants it addresses would damage public health and safety or the environment. A site owner would thus be prevented from seeking compensation for so-called garden-variety rubbish or trash.

The court's interpretation of § 361.003(30)(I) is consistent with the Texas Supreme Court's methodology for interpreting the SWDA. As discussed above, the Texas Supreme Court interprets the statute liberally to give effect to the Legislature's remedial purpose. For this reason, Cooper is not entitled to summary judgment dismissing Aviall's SWDA contribution claim to the extent that the claim includes non-hazardous solid waste.

H

Aviall moves for summary judgment establishing its right to recover on its SWDA claim. Cooper opposes the motion, arguing that Aviall has failed to establish beyond peradventure that all of its

expenses were reasonable and necessary.   Cooper points to the testimony of its expert that some of Aviall's expenses were unnecessary or unrelated to the releases.   It cites the testimony of Aviall's own witness and argues that the testimony establishes that some costs were unreasonable.   Finally, Cooper contends that Aviall cannot establish the reasonableness of its expenditures merely by showing that they were approved by the TNRCC.

Aviall responds that TNRCC approval alone establishes the reasonableness and propriety of its expenses.   It points to *R.R. Street I*, where the court stated:

> As to the necessity of these activities, the evidence showed that the TNRCC not only approved the proposed remedial activities but also *required* activities at most sites *in addition to* those proposed by [the plaintiff]. Such evidence establishes necessity.   Thus, [the plaintiff] conclusively established that its remedial costs were "reasonable and necessary."

*R.R. Street I*, 81 S.W.3d at 302 (emphasis in original).

*R.R. Street I* indicates that a TNRCC-mandated action is reasonable and necessary.   But the court does not interpret *R.R. Street I* to create a bright-line rule that TNRCC *approval*, by itself, indicates that remedial measures were reasonable and necessary.   While agency approval is evidence of reasonableness, other proof may show that expenses are unreasonable.

*R.R. Street I* determined that, given the facts of the case, the trial court did not err in refusing to submit this element to

- 31 -

the jury. *Id*. The court held that a plaintiff must prove that costs are "reasonable and necessary" by "showing that costs are (1) incurred in response to a threat to human health or the environment, and (2) necessary to address that threat." *Id*. at 301. The court looked to overwhelming evidence of soil and groundwater contamination, and it concluded that TNRCC approval "bolstered" the trial court's conclusion. *Id*. at 302. If TNRCC approval were alone sufficient, it would not have had need to examine the extensive evidence of contamination, and could have focused on the agreement alone.

Judge Lynn's recent decision in *American International Specialty Lines Insurance Co. v. 7-Eleven, Inc.*, 2010 WL 184444 (N.D. Tex. Jan. 19, 2010) (Lynn, J.), likewise does not establish a bright-line rule that TNRCC approval conclusively establishes that costs are necessary and reasonable. There, Judge Lynn addressed challenges to specific conduct: the remediator's decision not to clean up a minor spill occurring a decade before the contamination, and the use of in-situ chemical oxidation to remediate the release. *Id*. at *5. Judge Lynn concluded that, because the TNRCC had determined after an investigation that the initial spill warranted no further action, the cleanup was not unreasonable due to the failure to clean up that spill. *Id*. And she held that the remediator's method of cleanup was reasonable, even though the defendant argued it was not as effective as

intended, because the TNRCC had approved the method, the method actually reduced contamination, and the method was (even according to the defendant's expert) a "typical" remediation measure.  *Id*.

Because Cooper points to some evidence that Aviall's costs were unreasonable, Aviall has not established beyond peradventure that all of the expenses that it seeks to recover under the SWDA were reasonable and necessary.

I

Although Aviall is not entitled to final summary judgment in its favor on its claim for contribution under the SWDA,[10] it is entitled to partial summary judgment as to liability.

Aviall has shown beyond peradventure that Cooper is a "person[] responsible for solid waste."  *See* Tex. Health & Safety Code Ann. § 361.343 (Vernon 2001).  A person responsible for solid waste includes those who owned a solid waste facility at the time of disposal of solid waste.  *Id*. § 361.271(a)(2).  A solid waste facility includes property at which disposal of solid waste has

_____

[10]In their briefing, the parties have not adequately addressed the meaning of § 361.003(30)(I), and it is not clear from the record what portion of Aviall's expenses were necessary to "prevent, minimize, or mitigate damage to the public health and welfare or the environment that may otherwise result from a release or threat of release."  That the TNRCC ordered and approved the cleanup indicates that at least some of the expenses were proper. Aviall is thus entitled to partial summary judgment that it meets this element of the SWDA's requirements.  But because Aviall hasnot established beyond peradventure the reasonableness and necessity of all of its claimed expenses, the court cannot grant summary judgment establishing the extent of Cooper's liability.

occurred.  *See Vine Street*, 460 F.Supp.2d at 752 (citing Tex. Health & Safety Code Ann. § 361.003(36)).  The Facilities meet this definition, and Cooper owned them at the relevant time.

Aviall has established that it had TNRCC approval, meeting the second element.  Aviall has shown its efforts were necessary to address a release at the Facilities, satisfying the third element. At least some of its costs were reasonable and necessary, meeting the fourth element.  And the court has determined that Aviall made reasonable attempts to notify Cooper of the cleanup before the SWDA was amended in 1997, establishing the fifth element.  Finally, Aviall has established that some of its actions were necessary to protect public health, meaning they constitute a removal.

J

Aviall also seeks attorney's fees under the SWDA to the extent they were incurred in completing its response actions.  Cooper maintains that Aviall cannot recover attorney's fees.  Although the court agrees with Cooper that Aviall cannot recover attorney's fees as litigation expenses, it concludes that Aviall can recover payments that it made to lawyers, provided it can establish that they were closely tied to the actual cleanup.  Because the court cannot say that all fees that Aviall seeks under the SWDA are litigation expenses, it denies Cooper's motion in this respect.

Section 361.344(a) of the Texas Health and Safety Code provides that

- 34 -

> [a] person who conducts a removal or remedial action that is approved by the commission and is necessary to address a release or threatened release may bring suit in a district court to recover the reasonable and necessary costs of that action and other costs as the court, in its discretion, considers reasonable.

"The SWDA provides no other cognizable basis for an award of attorneys' fees. Texas courts have not determined whether attorneys fees are appropriate under this 'other costs' provision and there is no similar provision in CERCLA." *Vine Street*, 460 F.Supp.2d at 768.

Aviall argues that *Key-Tronic Corp. v. United States*, 511 U.S. 809 (1994), allows CERCLA plaintiffs to collect fees closely tied to the actual cleanup, but not those incurred primarily in protecting the plaintiff's interest. CERCLA § 107(a) provides that responsible parties are liable for "any . . . necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Section 361.344 is similar to § 107(a)(4)(B) and is arguably somewhat broader in scope, providing for the recovery of "reasonable and necessary costs of that action and other costs as the court, in its discretion, considers reasonable." Because the SWDA does not define what constitutes "reasonable and necessary costs," Texas courts look to federal case law interpreting similar language in CERCLA to aid in defining this phrase. *See R.R. Street I*, 81 S.W.3d at 300.

- 35 -

In *Key-Tronic* the Supreme Court held that § 107 of CERCLA did not permit the recovery of attorney's fees incurred for litigation-related fees in bringing a cost recovery action. *See Key-Tronic*, 511 U.S. at 819. But it also concluded that its decision did "not signify that all payments that happen to be made to a lawyer are unrecoverable expenses under CERCLA." *Id.* at 819-20. It reasoned that "some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B)." *Id.* at 820. The Court specifically cited the work performed by the plaintiff's lawyers in identifying other PRP's. *Id.* Such fees do not fall within the American Rule against fee-shifting "because they are not incurred in pursuing litigation." *Id.* (quoting *FMC Corp. v. Aero Indus., Inc.,* 998 F.2d 842, 847 (10th Cir. 1993)). The plaintiff undertook efforts that "significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs." *Id.* The Court held that "[t]hese kinds of activities are recoverable costs of response clearly distinguishable from litigation expenses." *Id.*

Applying *Key-Tronic*'s interpretation of CERCLA to the SWDA, the court holds that § 361.344(a) permits the recovery of payments to lawyers, provided they are not litigation expenses incurred in bringing an action under § 361.344(a) and are, instead payments for work that is closely tied to the actual cleanup. Because Aviall may be able to prove that some payments to lawyers fall within the

class of recoverable costs, the court denies Cooper's motion for summary judgment in this respect.

V

Aviall sues Cooper for contribution under Tex. Water Code Ann. § 26.3513(j) (Vernon 2008), which provides:

> [a]ny owner or operator of a petroleum storage tank at the site may voluntarily undertake such corrective action at the site as the commission may agree to or require. An owner or operator who undertakes corrective action pursuant to this subsection may have contribution against all other owners and operators with tanks at the site.

Aviall argues, in sum, that Cooper installed and filled the petroleum storage tanks for which Aviall undertook corrective action. It assumes that Cooper, as a former owner, qualifies as an "owner" under § 26.3513(j). Cooper responds that "owner" and "operator" refer only to those currently in possession or control of such tanks. Section 26.3513(j) has not been interpreted by any reported case.[11]

The court agrees with Cooper and accordingly grants summary judgment against Aviall on the TWC contribution claim. Although the SWDA in § 361.344 explicitly allows a current property owner to seek contribution from past owners, § 26.3513 does not. Rather, § 26.3513 addresses contamination at sites with tanks currently

---

[11]Although the statute was cited in *Ronald Holland's A-Plus Transmission & Automotive, Inc. v. E-Z Mart Stores, Inc.*, 184 S.W.3d 749, 759 (Tex. App. 2005, no pet.), the court did not interpret § 26.3513(j) or the definition of "owner."

owned  or  operated  by  multiple  parties.    Section  26.3513(a)
provides: "This section applies at a site where the owner and the
operator are different persons or at a site where there is more
than one underground storage tank, petroleum storage tank, or a
combination of both."   The present tense verbs in this section
indicate that its purpose is to allocate cost of remediation among
current owners or operators.   Section 26.3513(b) makes tank owners
and operators liable for releases or threatened releases from their
tanks  and  provides  that  liability  may  be  apportioned  to  other
owners and operators.   If the owners and operators are not able to
agree to an apportionment, the state can file a lawsuit to have the
court  apportion  costs.    *See* Tex.  Water  Code  Ann.  §  26.3513(e).
Section 26.3513(f) provides:

> [w]here the owner or operator can prove by a
> preponderance of the evidence that liability
> for the expenses of taking corrective action
> in response to a release or threatened release
> is divisible, that person shall be liable for
> the expenses only to the extent that the
> impact to the groundwater, surface water, or
> subsurface soils *is attributable to the*
> *release or threatened release from his*
> *underground storage tank or petroleum storage*
> *tank.*

(emphasis  added).    A  tank  owner's  or  operator's  liability  is
limited  to  releases  from  his  own  tank.    A  court's  task  is  to
determine whether the release came from the charged owner's or
operator's tank or the tanks of others.   Section 26.3513(f) does
not  direct  the  court  to  distinguish  between  pollution  occurring

under the current owner or operator and pollution occurring under past owners or operators.  When § 26.3513(f) requires the owner or operator to prove that the release was divisible, it obligates the owner or operator to prove that the release is divisible among his tank and the tanks of others at the same site.  It requires the court to apportion liability among the current owners and operators at the site.  The TWC serves a somewhat different function from the SWDA, which provides a current landowner the ability to seek contribution from a past landowner.

The general structure of § 26.3513 is consonant with § 26.3513(j), which allows contribution from "other owners and operators with tanks at the site."  "With" suggests current ownership or operation.  Similarly, the phrase indicates that § 26.3513(j) differentiates between the charged owner's or operator's tank and the tanks of other owners or operators, not between the tanks of current and past owners and operators.

Relief under the TWC is also unavailable because of the applicable statutory definitions of "owner" and "operator." Section 26.3513(j) allows a charged owner or operator to seek contribution only against "other owners and operators with tanks at the site." Definitions for "owner" and "operator" are found in Tex. Water Code Ann. § 26.342 (Vernon 2008).  Section 26.242(8) defines "operator" as "any person in day-to-day control of and having responsibility for the daily operation of the underground storage

tank system."  Cooper had ceased being an operator long before Aviall's cleanup. Section 26.342(9) defines "owner" as a "person who holds legal possession or ownership of an interest in an underground storage tank system or an aboveground storage tank." The use of the present tense of the verb indicates that current ownership is required.  The definition also allows former owners to escape liability under this statute.

> A person that has registered as an owner of an underground storage tank system . . . shall be considered the tank system owner until such time as documentation demonstrates to the executive director's satisfaction that the legal interest in the tank system was transferred to a different person subsequent to the date of the tank registration.

Tex. Water Code Ann. § 26.342(9).  An owner remains an owner until he transfers title to the tank.  Implicitly, once he does so, he is no longer an owner, and no other tank owner or operator can seek contribution from him.

Aviall argues that the TNRCC issued a ruling applying § 26.3513 to past owners.  *See* Duncan Thompson Petrol., Inc., Docket No. 94-0150-PST-E (Tex. Natural Res. Conservation Comm'n Dec. 6, 1995), *available at* 1995 WL 809811.  The language appears in an agreed order issued in 1995.  The Executive Director of the TNRCC petitioned the Commission to require various individuals and companies to perform corrective action at a contaminated site.  *Id*. at *1.  The order states that the charged parties "are or were owners and/or operators of the three [tank] systems at the . . .

site," and it required the parties to enter into an agreement concerning the remediation of the contamination. *Id*. It also states that "[t]his Agreed Order is entered without trial or adjudication of any issue of law or fact." *Id*. No further factual description of the parties is found in the order.

The court cannot determine from the language of the order whether the parties were in fact former owners of the tank systems. In any event, there is no apparent intent by the TNRCC to interpret § 26.3513(j) or to consider whether it applies to past owners and operators. The order instead addresses the claim for relief immediately before the TNRCC. Although an agency's interpretation of an ambiguous statute may be entitled to deference, less formal statements are not. *See Christensen v. Harris County*, 529 U.S. 576, 586-87 (2000). Deference is only proper where the interpreting agency engages in some formal adjudication or notice-and-comment rulemaking. *Id*. That the TNRCC did not do so is clear on the face of the ruling; therefore, the order is not entitled to deference. Further, Aviall has pointed to no other orders in which the TNRCC has made a similar interpretation.

Accordingly, the court grants summary judgment dismissing Aviall's claim for contribution under § 26.3513(j) of the TWC.

VI

Aviall brings claims against Cooper for breach of contract, breach of express warranty, and contractual indemnification based on alleged breaches of the contract under which Cooper sold the Facilities to Aviall.  Aviall essentially argues that the contract that governed Aviall's purchase of the Facilities from Cooper required Cooper to pay for part of the cleanup, and that Cooper breached contractual warranties by failing to inform Aviall of contamination at the Facilities.  Aviall moves for summary judgment establishing its breach of contract claim.  Cooper moves for summary judgment dismissing all three claims.[12]

A

To establish a claim for breach of contract under Texas law, Aviall must prove (1) the existence of a valid contract, (2) that it performed or tendered performance of its duties under the contract, (3) Cooper breached the contract, and (4) Aviall suffered damages as a result of the breach.  *See, e.g.*, *Lewis v. Bank of Am. NA,* 343 F.3d 540, 545 (5th Cir. 2003).  A defendant breaches a contract when it fails to do something it has promised to do. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App. 2003, writ denied).  In construing the contract, the court must give effect to

_____

[12]Cooper contends, in part, that Aviall's contract claims are barred by the statute of limitations.  Because the court concludes that the claims fail under the terms of the contract (which, in part, include time limits for asserting such claims), the court need not address Cooper's statutory limitations defense.

the intentions of the party as expressed in the contract. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).  To determine the meaning of the contract, a court must "examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless." *Aspen Tech., Inc. v. Shasha*, 253 S.W.3d 857, 861 (Tex. App. 2008, no pet.).

B

The parties executed three related agreements concerning the sale of the Facilities from Cooper to Aviall.  They entered into an Asset Purchase Agreement on December 10, 1981.  The parties closed the transaction on December 18, after executing an amendment to the asset purchase agreement.  (The court will refer to the asset purchase agreement, as amended, as the "Agreement.")  Aviall and Cooper entered into an Agreement and Mutual Release on October 11, 1982 (the "Release") that determined that a number of the promises from the Agreement had been satisfied, and they released each other from certain of these promises.

Article 1 of the Agreement sets out the basic structure of the transaction, describing the assets Cooper is transferring (i.e., Cooper's Aircraft Maintenance Division), the assets it is not transferring, the consideration Aviall is exchanging for the assets, and a procedure for determining adjustments to the purchase price.  Section 1.03(a) lists the liabilities that Aviall is

assuming, and § 1.03(b) specifies those that it is not assuming.
Under § 1.03(a):

> [Aviall] hereby agrees to assume, pay,
> discharge, or perform when due the following
> liabilities and obligations (except Excluded
> Liabilities as defined in (b) below) of the
> Division as they exist on the Closing Date
> . . . :
>
> (i) [Cooper's] liabilities and obligations
> relating to the Division to the extent
> reflected on the liabilities side of the
> December 31, 1980 balance sheet . . . or
> incurred thereafter in the ordinary course of
> business . . ., other than the liabilities set
> forth in § 1.03(b)(i)-(x);
>
> (ii) [Cooper's] obligations relating to the
> Division under the contracts or commitments
> listed on the Contracts Schedule . . .
>
> (iii) [Cooper's] liabilities and obligations
> relating to the Division for repairs,
> replacements, returns, or allowances and
> related services required by the terms and
> conditions of warranty arrangements;
>
> (iv) [Cooper's] liabilities for products
> liability claims and lawsuits with respect to
> the Division . . ., but only if [Cooper] had
> no notice or knowledge, prior to Closing, of
> the particular claim or lawsuit and only to
> the extent that [Cooper] does not have
> insurance coverage with respect to such claim
> or lawsuit; and
>
> (v) [Cooper's] obligations . . . [for] taxes
> in connection with [this sale].

D. June 1, 2009 App. 6.

   Under § 1.03(b):

> [Aviall] will not assume or be liable for any
> of the following liabilities or obligations
> and, notwithstanding any implication to the

- 44 -

> contrary contained in (a) above, none of the
> following liabilities or obligations are
> "Assumed Liabilities" for purpose of this
> Agreement:
>
> (i) Any of [Cooper's] liabilities or
> obligations under this agreement;
>
> . . .
>
> (iii) Any of [Cooper's] liabilities or
> obligations to the extent [Cooper] is insured
> or otherwise contractually indemnified;
>
> (iv) Any of [Cooper's] liabilities or
> obligations, to the extent due to facts and
> circumstances prior to the Closing Date, by
> reason of any violation of federal, state,
> local or foreign law or any requirement of any
> governmental authority;
>
> . . .
>
> (x) Any other liability or obligation of
> [Cooper] not expressly assumed by [Aviall]
> under § 1.03(a) hereof.

*Id.* at 6-7.

Article 2 contains conditions to closing, and Article 3 covers covenants that Cooper is making.

Section 3.01 lists affirmative covenants and states that, prior to closing, Cooper will

> (a) Continue to conduct the Division's
> operations at all locations at which
> operations are presently conducted, but only
> in the ordinary and usual course of business;
>
> . . .
>
> (d) Maintain the assets of the Division in
> customary repair . . .
> . . . [and]

> (g) Comply with all legal requirements and
> contractual obligations applicable to the
> Division's operations and businesses[.]

*Id.* at 10-11.  Section 3.02 specifies negative covenants, stating

that, before closing, Cooper will not, without Aviall's consent,

"[t]ake or omit to take any action . . . [that] could be reasonably

anticipated to have a material adverse effect upon the Division's

businesses, operations, [or] financial conditions . . . ."  *Id.* at

11.

Article 4 prescribes Cooper's representations and warranties.

Section 4.05 provides:

> As of the Closing, [Cooper] will not, with
> respect to the Division, have any obligations
> or liabilities in excess of $100,000 . . .
> arising out of transactions entered into at or
> prior to the Closing, or any action or
> inaction at or prior to the Closing, or any
> state of facts existing at or prior to the
> Closing, . . . except liabilities which have
> arisen after the date of the Latest Balance
> Sheet in the ordinary course of business (none
> of which is a liability for breach of
> contract, breach of warranty, tort,
> infringement, claim or lawsuit), and []
> liabilities otherwise disclosed pursuant to
> this Agreement or the Schedules attached
> hereto.

*Id.* at 12.  Section 4.06 states:

> Each of the liabilities described in
> § 1.03(a)(i) will appear on the Closing
> Balance Sheet in an amount equal to the amount
> which [Aviall] has assumed pursuant to §
> 1.03(a)(i), or will have been otherwise
> expressly disclosed by [Cooper] to [Aviall] in
> the schedules attached to this Agreement.

*Id.* at 13.  Section 4.08 recites that, "since December 31, 1980,

- 46 -

[Cooper] has not with respect to the Division (i) . . . become
subject to any material liabilities, except . . . liabilities
incurred in the ordinary course of business[.]"    *Id*. at 13.
Section 4.21 provides:

> Neither this Agreement, nor any of the
> schedules, attachments or exhibits hereto, nor
> any other document delivered pursuant hereto,
> contain any untrue statement of a material
> fact or omit a material fact necessary to make
> the statements . . . not misleading.  There is
> no fact which has not been disclosed to
> [Aviall] of which any of the officers,
> directors, or employees of [Cooper] or any of
> its subsidiaries or affiliates is aware and
> which materially affects adversely or could
> reasonably be anticipated to materially affect
> adversely the division's businesses, financial
> condition, . . . or business prospects.

*Id*. at 18.  Section 4.22 similarly states: "[f]rom the date hereof
to the Closing, [Cooper] will promptly inform [Aviall] in writing
of any material variances from the representations and warranties
contained in this Article 4."   *Id*.

     Article 5 contains Aviall's representations and warranties.
And Article 6 sets out events that allow the termination of the
transaction.

     Articles 7 and 8 contain miscellaneous other agreements.  The
parties agree in § 7.01 that "the representations, warranties,
covenants, and agreements set forth in this Agreement, will survive
the Closing Date and the consummation of the transactions
contemplated hereby, notwithstanding any [knowledge held by Aviall
or its employees]."   *Id*. at 20.  In § 7.02(a), the parties agree

- 47 -

that Cooper will

> indemnify [Aviall] and hold [Aviall] harmless
> against any loss, liability, damage, or
> expense . . . which [Aviall] may suffer . . .
> (i) as a result of the breach of any
> representation or warranty contained in
> Article 4 of this agreement (other than as set
> forth in (iii) below) [and not disclosed at
> closing], (ii) as a result of the breach by
> Cooper of any representation, warranty,
> covenant, or agreement contained in this
> Agreement (other than the representations and
> warranties contained in Article 4 of this
> agreement), and (iii) as a result of the
> breach of § 4.06 of this Agreement or any
> liability of [Cooper], its affiliates and
> subsidiaries other than Assumed Liabilities.

*Id.* at 21.

The parties include several limits on future liabilities arising from the Agreement. Cooper's duty to indemnify is subject to certain contractual limitations periods. Aviall must request indemnification required by § 7.02(a)(i) (i.e., for breaches of Article 4 warranties and representations, other than § 4.06), and it must give Cooper notice within one year of closing (or within 30 days of the end of Aviall's first fiscal year). *See* § 7.02(b)(ii). Aviall must request indemnification under § 7.02(a)(iii)—for a breach of Cooper's promise under § 4.06 to disclose the amount of liabilities assumed by Aviall, or from any of Cooper's liabilities—by giving notice within five years of closing. *See* § 7.02(c)(ii). Indemnity required by § 7.02(a)(ii)—for expenses resulting from Cooper's breach of a representation, warrant, covenant, or agreement, other than set out in Article 4—is not

- 48 -

subject to a contractual limitations period.

Under the Release entered into in 1982,[13] the parties agree in § 3.1 that

> [a]ll representations, warranties, covenants and agreements of Cooper contained in the [Agreement] are deemed to be fully satisfied forever.  Aviall releases Cooper from any and all obligations or claims to indemnify Aviall for any breach of any representation, warranty, covenant or agreement of Cooper contained in or related to the [Agreement].

D. June 1, 2009 App. 35.  There are several exceptions, however, to the general release.  Under § 3.2,

> [t]he provisions of Section 3.1 above notwithstanding and subject to the applicable time limits specified in the [Agreement], Cooper recognizes the existence of its obligations (a) with regard to liabilities not assumed by Aviall pursuant to Section 1.03(b) of the [Agreement] . . . and (c) with regard to its representations in . . . section 4.15 of the [Agreement].

*Id.* at 35–36.

C

Aviall brings separate claims for breach of contract, breach of warranty, and contractual indemnification, but all three are based on obligations that Cooper allegedly undertook under the Agreement.  And in all three claims, Aviall asserts that it is entitled to recover from Cooper under the Agreement for its costs and liabilities related to Cooper's alleged acts and omissions that

---

[13]Section 8.06 of the Agreement allowed the parties to modify the terms of the Agreement in writing.

resulted in contamination of soils and groundwater at the Facilities.

In the breach of contract claim, Aviall avers that, by failing to pay for cleanup costs, Cooper breached its agreement to retain specific risks. Aviall also alleges that Cooper breached the Agreement by falsely representing that it was not in violation of any law, regulation, or requirement, including environmental protection laws and regulations, and by failing to inform Aviall of material variances from the representations and warranties contained in Article 4 of the Agreement.

In its breach of warranty claim, Aviall avers that Cooper expressly warranted that it was not in violation of any applicable law, regulation, or requirement, despite the fact that it had violated environmental laws and regulations by releasing petroleum and hazardous substances into the ground and groundwater at the Facilities. Aviall alleges that Cooper breached the warranty in the Agreement regarding compliance with applicable environmental laws and regulations.

In the claim for contractual indemnification, Aviall alleges that Cooper breached its covenant to indemnify Aviall against any loss, liability, damage, or expense that Aviall might incur as a result of any breach by Cooper of any representation, warranty, covenant, or agreement contained in the Agreement. This claim is substantially the same as, if not identical to, the breach of

contract claim.  Essentially, Aviall avers that Cooper agreed to indemnify it for losses resulting from the conduct that Aviall alleges breached the Agreement.[14]

D

The court turns first to Aviall's breach of contract claim. Both parties move for summary judgment on this claim, and the court will consider the motions together.

1

The parties' entitlement to summary judgment turns on an interpretation of the Agreement.  Aviall argues that certain provisions, specifically § 1.03(b), create contractual obligations that are enforceable without respect to limitations found elsewhere in the Agreement.[15]  In § 1.03, the parties allocate responsibility for liabilities that exist at closing.  Section 1.03(a) specifies the liabilities of Cooper's Aircraft Maintenance Division that Aviall assumes.  These include liabilities that relate to the operation of the Facilities that either appear on Cooper's balance

---

[14]Aviall may be asserting these claims separately to avoid the contractual time limitations on presenting certain contract claims. *See, e.g.,* P. June 1, 2009 Br. 6 (arguing that contractual time limits on asserting claims under Agreement do not apply to independent breach of contract claim regarding retained liabilities and that, under contract, right to indemnity is cumulative of common law right to sue for breach of contract).

[15]Although Aviall's third amended complaint refers to three separate obligations, the parties' briefing refers primarily to the role of § 1.03(b) of the Agreement.  The court therefore focuses on § 1.03(b), although its reasoning applies equally to the other provisions.

sheet on December 31, 1980 or that are incurred thereafter in the ordinary course of business.  This provision imposes on Aviall the contractual duty to pay certain pre-closing liabilities of Cooper's operation; such a provision is necessary because liabilities not expressly assumed by a corporate buyer remain the responsibility of the seller.  *See, e.g., C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 790-91 (Tex. App. 2004, no pet.).  Section 1.03(b) states that Aviall "will not assume or be liable for [other] liabilities or obligations," including Cooper's liabilities or obligations resulting from a violation of federal or state law.  D. June 1, 2009 App. 6.  Aviall maintains that a covenant is apparent in § 1.03(b), and, alternatively, that the court should find an implied covenant in the section.  Cooper responds that § 1.03(b) does not create an independent covenant, and that its relevant obligations arise under the Agreement's indemnification provisions.

2

If the Agreement only contained § 1.03(a) and (b), a plausible argument could be made that Cooper could sue Aviall under § 1.03(b) to recover expenses that Aviall incurred but that it did not assume under the Agreement.  For example, assume that Aviall and Cooper entered into a contract that provided only that Aviall would assume liability for Cooper's pre-closing debt to Jones Company.  If Jones Company made demand on Cooper, who in turn made demand on Aviall, who then refused to pay the debt, Cooper could presumably bring a

breach of contract claim against Aviall for failing to honor its contractual obligation to assume liability for the Jones Company debt.  But this right would be based on a contract that reflected that this was the parties' objective intent.

In the present case, however, the Agreement has other relevant provisions, and the contract must be interpreted as a whole.  *See, e.g., Bank One, Tex., N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998) (Fitzwater, J.) (Texas law) (holding that court must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless").  Section 1.03 and other provisions that impose obligations on the parties must be read in tandem with § 7.02, the indemnification section of the Agreement.  That section carefully specifies Cooper's indemnity obligations and, in some pertinent respects, limits them by time and notice requirements.  Reading the contract as a whole, it is apparent that Aviall and Cooper intended that § 7.02 govern their rights to assert breach of contract claims based on breaches of other contractual provisions, including § 1.03(b).

A court in construing a contract must also avoid interpretations that render provisions meaningless.  *See Bank One*, 16 F.Supp.2d at 707.  Cooper's relevant contractual duty to Aviall regarding the unassumed liabilities described in § 1.03(b) is created by § 7.02(a)(iii) of the Agreement.  There, Cooper agrees,

in pertinent part, to "indemnify [Aviall] and hold [Aviall] harmless against any loss, liability, damage or expense . . . which [Aviall] may suffer, sustain, or become subject to . . . (iii) as a result of . . . any liability of [Cooper] . . . other than Assumed Liabilities." D. June 1, 2009 App. 21. Thus, assuming Cooper retained liability for environmental cleanup, its contractual obligation to indemnify Aviall for such liability is imposed by § 7.02(a)(iii), not § 1.03(b). Section 7.02(a)(iii) would in effect be meaningless if Aviall could base a breach of contract claim on § 1.03(b) alone, i.e., one that was not subject to the restrictions of § 7.02.

Finally, a court must examine and consider the entire writing in an effort to harmonize all the provisions of the contract. *Bank One*, 16 F.Supp.2d at 707. Provisions like § 1.03(b) and § 7.02(a)(iii) are easily harmonized. Section 1.03(b) specifies the liabilities that Aviall does not assume, and § 7.02(a)(iii) governs Aviall's right (and limitations on the right) to enforce Cooper's contractual obligation to take responsibility for liabilities that Aviall does not assume.

Accordingly, although in some circumstances a breach of contract claim could be based on a provision like § 1.03, this was not the objective intent of Aviall and Cooper when they entered into the Agreement. Aviall cannot maintain a breach of contract claim that is independent of the Agreement's indemnity provisions.

Because Aviall's breach of contract claim is predicated on a duty supposedly found in § 1.03(b) alone,[16] and not on the Agreement's indemnification provisions, Cooper is entitled to summary judgment dismissing Aviall's breach of contract claim.

E

The court next considers Aviall's breach of warranty claim. In § 4.09(f) of the Agreement, Cooper warrants that, "with respect to the Division, [it] is not in violation of any applicable zoning ordinance or other law, regulation, or requirement relating to the operation of owned or leased properties." D. June 1, 2009 App.

---

[16]To the extent that Aviall's breach of contract claim is based on Cooper's alleged breach of a contractual warranty or failure to inform Aviall of material variances from the representations and warranties, it likewise fails.

In § 4.09(f) of the Agreement, Cooper warrants that "with respect to the Division, [it] is not in violation of any applicable zoning ordinance or other law, regulation or requirement relating to the operation of owned or leased properties[.]" D. June 1, 2009 App. 14. Cooper obligates itself in § 7.02(a)(i), in pertinent part, to "indemnify [Aviall] and hold [Aviall] harmless against any loss, liability, damage, or expense . . . which [Aviall] may suffer . . . as a result of the breach of any representation or warranty contained in Article 4 of this agreement[.]" Id. at 21. Section 4.22 of the Agreement provides, in pertinent part: "From the date hereof to the Closing, [Cooper] will promptly inform [Aviall] in writing of any material variances from the representations and warranties contained in this Article 4." Id. at 18. Under § 7.02(a)(i), Cooper is required to indemnify Aviall for any loss associated with a failure to correct a past representation. These parts of Article 4, however, do not impose on Cooper a duty that is independent of the ones found in the indemnity provisions of the Agreement. Aviall's right to sue Cooper for breaching one of these obligations arises under the indemnity provisions. Cooper is therefore entitled to summary judgment dismissing Aviall's breach of contract claim to the extent it is based on one of these grounds as well.

14.[17]  As with § 1.03(b), this provision must be read as part of the
Agreement as a whole, including § 7.02.  Aviall's right to enforce
the breach of a warranty that Cooper makes in § 4.09(f) is found in
§ 7.02(a)(i).   In § 7.02(a)(i), Cooper agrees to "indemnify
[Aviall] and hold [Aviall] harmless against any loss, liability,
damage, or expense . . . which [Aviall] may suffer . . . as a
result of the breach of any representation or warranty contained in
Article 4 of this agreement[.]"  D. June 1, 2009 App. 21.

As with Aviall's breach of contract claim, Aviall's right, and
the limitations on that right, to enforce Cooper's warranty
obligation are found in the indemnity provisions of the Agreement,
not in § 4.09(f) itself.   In other words, as with § 1.03(b),
although Cooper makes a warranty to Aviall in one part of the
Agreement (§ 4.09(f)), Aviall's right to sue Cooper for breaching
§ 4.09(f) arises under another part: the indemnity provisions.  The
court therefore grants Cooper's motion for summary judgment
dismissing Aviall's breach of warranty claim, which arises under
§ 4.09(f) alone.

---

[17]The court assumes *arguendo* that the division was non-
compliant at the time of the sale.

F

Finally, the court considers Aviall's contractual indemnification claim.

1

In § 7.02, the parties agree that Cooper will

> indemnify [Aviall] and hold [Aviall] harmless
> against any loss, liability, damage or expense
> . . . which [Aviall] may suffer . . . (i) as a
> result of the breach of any representation or
> warranty contained in Article 4 of this
> agreement (other than as set forth in (iii)
> below) [and not disclosed at closing], (ii) as
> a result of the breach by Cooper of any
> representation, warranty, covenant or
> agreement contained in this Agreement (other
> than the representations and warranties
> contained in Article 4 of this Agreement), and
> (iii) as a result of the breach of § 4.06 of
> this Agreement or any liability of [Cooper],
> its affiliates and subsidiaries other than
> Assumed Liabilities.

D. June 1, 2009 App. 21. The parties also agree to limit the time period in which Aviall can bring claims for indemnification. Under § 7.02(b)(ii), Aviall must request indemnification under § 7.02(a)(i) within one year from closing.[18]   And under § 7.02(c)(ii), Aviall must request indemnification under § 7.02(a)(iii) within five years of closing. Indemnity required by

---

[18]Tex. Civ. Prac. & Rem. Code § 16.070 (Vernon 2008) states that parties cannot agree to a contractual limitations period shorter than one year. However, to the extent § 7.02(b) could be considered a limitations period rather than an independent duty of Cooper's, § 16.070(b) states the rule does not apply to the sale of a business entity where one party's consideration is at least $500,000.

§ 7.02(a)(ii) is not subject to a contractual limitations period.

In the Release, the parties agree to release each other from most liabilities.  Section 3.1 of the Release provides that

> [a]ll representations, warranties, covenants and agreements of Cooper contained in the [Agreement] are deemed to be fully satisfied forever.  Aviall releases Cooper from any and all obligations or claims to indemnify Aviall for any breach of any representation, warranty, covenant or agreement of Cooper contained in or related to the [Agreement].

D. June 1, 2009 App. 35.  But the parties also agree that liability resulting from unassumed liabilities will not be released.  *Id*. at 35–36.

In its contractual indemnification claim, Aviall alleges that Cooper failed to honor its environmental liabilities that the parties agreed in § 1.03(b) that Aviall would not assume.  Beyond this, Aviall does not specify any other alleged breach, but reiterates the other alleged breaches, acts, and omissions asserted in its third amended complaint.  The court therefore assumes that the breaches asserted in the breach of contract and breach of warranty claims are asserted again as grounds that support Aviall's contractual indemnification claim.

2

The court considers, first, whether Cooper can be held liable for failing to indemnify Aviall for expenses resulting from liabilities Aviall did not assume, as specified in § 1.03(b).  Indemnity for § 1.03(b) liabilities is governed by § 7.02(a)(iii),

because § 1.03(b) pertains to "liabilit[ies] other than Assumed Liabilities." D. June 1, 2009 App. 21.  This duty to indemnify is limited to five years from the day of closing, a period that elapsed well before Aviall requested indemnity from Aviall or gave it notice.

Aviall argues that its claim for Cooper's failure to fund the retained liability is governed by § 7.02(a)(ii), not (iii).  The consequence of such a reading of the Agreement is that Aviall's claim would not be subject to time or notice limitations.  And the claim would not be foreclosed by the Release because it pertains to Cooper's retained liabilities, to which the Release does not apply. Aviall argues that § 7.02(a)(iii) applies to liabilities known at the time of closing, while § 7.02(a)(ii) applies to future liabilities unknown at closing.  It draws this conclusion, not from the wording of § 7.02(a), but from § 1.03(b).  Aviall argues that, as a prudent buyer, it included the provisions of § 1.03(b) to ensure that Cooper remained liable for such unknown pre-closing liabilities that existed at closing; that the parties included § 7.02(a)(ii) to ensure that Aviall would never be liable for such unknown liabilities; and that its clear intent at the time was to apply § 7.02(a)(ii) to unknown liabilities under § 1.03(b), because a prudent buyer would never agree to accept a time limit on seeking indemnification for such expenses.

The court disagrees with Aviall.  This reasoning could just as

easily support Cooper's position, because a prudent seller would
not wish to remain liable for the condition of its former property
long after the property was sold.  The court therefore looks, not
to the theoretical intentions of the parties, but to the Agreement
itself and to the parties' intentions as expressed objectively.
Section 7.02(a)(iii) addresses indemnification for Cooper's
liabilities that Aviall is not assuming.  Under § 7.02(c)(ii),
Cooper's obligations to indemnify Aviall is governed, in relevant
part, by a five-year notice provision.  The court holds that this
is a clear, objective indication of the parties' intentions.  The
court therefore holds that Cooper did not breach the Agreement by
failing to indemnify Aviall for environmental expenses.

3

The court addresses, second, Aviall's claim that Cooper
breached its warranty that its Aircraft Maintenance Division was in
full compliance with applicable laws and regulations.  The court
assumes *arguendo* that the Division was non-compliant at the time of
the sale.

In § 4.09(f), Cooper warrants that "with respect to the
Division, [it] is not in violation of any applicable zoning
ordinance or other law, regulation or requirement relating to the
operation of owned or leased properties[.]"  D. June 1, 2009 App.
14.  Cooper obligates itself in § 7.02(a)(i), in pertinent part, to
"indemnify [Aviall] and hold [Aviall] harmless against any loss,

liability, damage or expense . . . which [Aviall] may suffer . . . as a result of the breach of any representation or warranty contained in Article 4 of this agreement[.]"  *Id.* at 21.  Section 7.02(b)(ii), structured similarly to § 7.02(c)(ii), limits Cooper's duty to indemnify under § 7.02(a)(1) to those claims (as relevant here) presented within one year.[19]  As before, Aviall's notice was not delivered until after Cooper's contractual obligation had expired.  Cooper no longer had a contractual obligation to indemnify Aviall for expenses resulting from a breach of warranty, and it could not have breached the Agreement in this respect.

4

The court turns, third, to Aviall's final predicate for its contractual indemnification claim: that Cooper failed to inform it of material variances from its representations and warranties. Section 4.22 of the Agreement provides, in pertinent part: "From the date hereof to the Closing, [Cooper] will promptly inform [Aviall] in writing of any material variances from the representations and warranties contained in this Article 4."  D. June 1, 2009 App. 18.  The court assumes *arguendo* that Cooper failed to comply with this obligation.

---

[19]Tex. Civ. Prac. & Rem. Code Ann. § 16.070 (Vernon 2008) states that parties cannot agree to a contractual limitations period shorter than one year.  To the extent, however, that § 7.02(b) can be considered a limitations period rather than an independent duty of Cooper's, § 16.070(b) states the rule does not apply to the sale of a business entity where one party's consideration is at least $500,000.

Under § 7.02(a)(i), Cooper was required to indemnify Aviall for any loss associated with a failure to correct a past representation. Aviall's claim fails for the same reasons as explained above: Cooper's obligation to indemnify Aviall had lapsed under § 7.02(b)(ii). Cooper had no duty to indemnify for losses incurred as a result of its failure to inform Aviall of material variances, and thus did not breach the indemnification clause on this basis.

G

In sum, the court grants summary judgment dismissing Aviall's claims for breach of contract, breach of express warranty, and contractual indemnification.

VII

Cooper moves for summary judgment dismissing Aviall's declaratory judgment claim. Although, as pleaded, the claim seeks declaratory judgment under CERCLA, the Federal Declaratory Judgment Act, and the Texas Declaratory Judgments Act ("TDJA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (Vernon 2008), 3d Am. Compl. ¶¶ 90, 92, Cooper's motion for partial summary judgment is limited to Aviall's state-law claims. *See* D. June 1, 2009 Br. 1.[20] The

---

[20]Cooper's June 1, 2009 motion is captioned as a "Motion for Partial Summary Judgment on State Law Causes of Action." D. Mot. 1. The court's March 30, 2009 case management order, which the parties submitted by agreement, provides that their motions for partial summary judgment will "regard[] liability on state law claims." Mar. 30, 2009 Order 1.

court will therefore only address whether Aviall's request for relief under the TDJA should be dismissed, and it can do so on one of the grounds that Cooper raises.

The TDJA is not substantive law and does not apply in federal court. *See, e.g., Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 2006 WL 3438661, at *2 (N.D. Tex. Nov. 29 2006) (Fitzwater, J.), *aff'd*, 509 F.3d 216 (5th Cir. 2007). The court therefore dismisses Aviall's claim for declaratory judgment under the TDJA.

                                    VIII

Aviall seeks in the alternative to recover its cleanup costs from Cooper under a theory of quantum meruit. Aviall and Cooper both move for summary judgment on this claim. Cooper points to the absence of evidence that Aviall performed the work for Cooper's benefit and that Cooper accepted the benefit.

To recover for quantum meruit, Aviall must show that (1) it rendered valuable services to Cooper; (2) the services were rendered on behalf of Cooper; (3) Cooper accepted and enjoyed those benefits; and (4) Cooper was notified, by Aviall or otherwise, that Aviall expected to be compensated for its work. *See Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). "Recovery in quantum meruit will be had when non payment for the services rendered would 'result in an unjust enrichment to the party benefited by the work.'" *Id.* (citing *City of Ingleside*

*v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App. 1977, writ ref'd n.r.e.)).

The court holds that Cooper is entitled to summary judgment. The cleanup that Aviall undertook was at least in part for its own benefit.  It owned the Facilities, and it was legally obligated under state and federal law to remediate contamination at the Facilities.  The second element of this claim is not met when the benefit to the person sought to be charged is incidental to the real purpose for which the performing party undertook the conduct. *See Bashara v. Baptist Mem. Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). In *Bashara* the court held that an attorney was not entitled to quantum meruit recovery from a hospital.  He had obtained a settlement in favor of his client, the proceeds of which were used to discharge a lien assessed to the client by the hospital.  *Id*. In *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988), the Texas Supreme Court held that a plaintiff who performed work for a joint venture, of which he owned a 40% stake, was not entitled to quantum meruit recovery against his joint venturers because the work was partially to his benefit.  Although Cooper may have received some incidental benefit from the cleanup, Aviall performed the cleanup because it was legally obligated to do so.  And Aviall performed much of the remediation before notifying Cooper, indicating it performed the work on its own behalf.

Cooper also argues that Aviall fails to point to evidence that

Cooper accepted the benefit of Aviall's efforts.   Aviall responds that Cooper's silence in the face of Aviall's cleanup constitutes acceptance.   While acquiescence may constitute acceptance, *see Jorritsma v. Tymac Controls Corp.,* 864 F.2d 597, 599 (8th Cir. 1988), Cooper's silence was largely a result of its not having been notified of the cleanup until 1995 and 1996.   Aviall points to no evidence that indicates that Cooper implied by its silence its acceptance of responsibility for the cleanup.   And it cites no other evidence that can reasonably be construed as indicating that Cooper accepted the benefit that Aviall conferred.

Because a reasonable jury could not find in Aviall's favor on the second or third element of this claim, its failure to produce proof on an essential element of the claim renders all other facts immaterial.   *See Trugreen Landcare,* 512 F.Supp.2d at 623.   The court therefore grants summary judgment dismissing Aviall's quantum meruit claim.

IX

Cooper asserts a counterclaim against Aviall for breaching the terms of the Release.   Section 5.2 of the Release provides: "Neither Aviall nor Cooper will ever commence, directly or indirectly, any action, suit or other proceeding, at law or in equity, against the other, based upon any representations, warranties, covenants, agreements, obligations, claims, debts, or liabilities that are released in this instrument."   D. June 1, 2009

App. 37.  Cooper alleges that Aviall breached the Release by suing Cooper based on released contractual liability, and it seeks partial summary judgment establishing Aviall's liability.

As noted, to recover for a breach of contract, Cooper must prove (1) the existence of a valid contract, (2) that it performed or tendered performance of its duties under the contract, (3) Aviall breached the contract, and (4) Cooper suffered damages as a result of the breach.  *See, e.g.*, *Lewis,* 343 F.3d at 544-45. Aviall promised not to sue based on liabilities that it had released.  The Agreement did not release Cooper from its obligation to pay for expenses related to liabilities Aviall did not assume. Aviall's breach of contract claim rests, in part, on Cooper's failure to indemnify Aviall for expenses resulting from liabilities Aviall argues were retained by Cooper.  A reasonable jury could not find on this basis that Aviall breached the Release.

But Aviall also alleges a claim for breach of warranty based on Cooper's warranty that the Facilities were compliant with existing laws and regulation.  *See* 3d Am. Compl. ¶ 80.  Aviall asserts that Cooper breached this warranty.  *Id.* at ¶ 82.  This warranty was released by the Release.  *See* D. June 1, 2009 App. 37 (Release § 5.2).  Cooper has established beyond peradventure that Aviall's claim for breach of warranty is itself a breach of the

Release.[21]  Cooper is therefore entitled to partial summary judgment establishing that Aviall is liable on this basis for breach of contract.

*      *      *

Accordingly, for the foregoing reasons, the court grants in part and denies in part Aviall's June 1, 2009 motion for partial summary judgment and Cooper's June 1, 2009 motion for partial summary judgment.  The court denies Aviall's July 20, 2009 motion to strike as moot.

**SO ORDERED.**

February 5, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[21]Aviall also breached the Release by alleging in its breach of contract claim that Cooper failed to notify it of material variances from the warranties, as required by § 4.22 of the Agreement.  This duty was waived in the Release.